## METROPOLITAN RAILROAD COMPANY *v.* DISTRICT OF COLUMBIA.

ERROR TO THE SUPREME COURT OF THE DISTRICT OF COLUMBIA.

No. 5. Argued November 22, 1888. — Decided October 21, 1889.

The District of Columbia is a municipal corporation, having a right to sue and be sued, and is subject to the ordinary rules that govern the law of procedure between private persons.

The Maryland statute of limitations of 1715, which is in force in the District of Columbia, embraces municipal corporations.

The sovereign power of the District of Columbia is lodged in the government of the United States, and not in the corporation of the District.

This court expresses no opinion upon the question whether, when the right of property in highways and public places is vested in a municipality, an assertion of that right against purprestures or public nuisances is subject to the law of limitations.

An action by a municipal corporation to recover from a street railroad company the cost of maintaining pavements in a street, which the company is, by its charter, bound to maintain, is not an action upon the statute, but one in assumpsit.

ASSUMPSIT. Verdict for the plaintiff, and judgment on the verdict. The defendant sued out this writ of error. The case is stated in the opinion.

*Mr. Nathaniel Wilson* and *Mr. Walter D. Davidge* for plaintiff in error.

*Mr. Henry E. Davis* and *Mr. A. G. Riddle* for defendant in error.

MR. JUSTICE BRADLEY delivered the opinion of the court.

This was an action brought by the District of Columbia in November, 1880, to recover from the Metropolitan Railroad Company the sum of $161,622.52. The alleged cause of action was work done and materials furnished by the plaintiff in paving certain streets and avenues in the city of Washington at various times in the years 1871, 1872, 1873, 1874, and 1875, upon and in consequence of the neglect of the defendant to do said work and furnish said materials in accordance with its duty as prescribed by its charter.

The defendant was chartered by an act of Congress dated July 1, 1864, 13 Stat. 326, c. 190, and amended March 3, 1865, 13 Stat. 536, c. 119. By these acts it was authorized to construct and operate lines or routes of double track railways in designated streets and avenues in Washington and Georgetown.

The first section of the charter contains the following proviso: "Provided, that the use and maintenance of said road shall be subject to the municipal regulations of the city of Washington within its corporate limits." Of course this provision reserves police control over the road and its operations on the part of the authorities of the city. The fourth section of the charter declares, "that the said corporation hereby created shall be bound to keep said tracks, and for the space of two feet beyond the outer rail thereof, and also the space between the tracks, at all times well paved and in good order, without expense to the United States or to the city of Washington." The fifth section declares "that nothing in this act shall prevent the government at any time, at their option, from altering the grade or otherwise improving all avenues and streets occupied by said roads, or the city of Washington from so altering or improving such streets and avenues, and the sewerage thereof, as may be under their respective authority and control; and in such event it shall be the duty of said

company to change their said railroad so as to conform to such grade and pavement."

It is on these provisions that the claim of the city is based.

The amended declaration sets out in great detail the grading and paving which were done in various streets and avenues along and adjoining the tracks of the defendant, and which it is averred should have been done by the defendant under the provisions of its charter; but which the defendant neglected and refused to do.

The defendant filed twelve several pleas to the action, the eleventh and twelfth being pleas of the statute of limitations. Issue was taken upon all the pleas except these two, and they were demurred to. The court sustained the demurrer, and the cause was tried on the other issues, and a verdict found for the plaintiff.    4 Mackey, 214.

The case is brought here by writ of error, which brings up for consideration a bill of exceptions taken at the trial, and the ruling upon the demurrer to the pleas of the statute of limitations.    It is conceded that if the court below erred in sustaining that demurrer, the judgment must be reversed. That question will, therefore, be first considered.

It is contended by the plaintiff that it (the District of Columbia) is not amenable to the statute of limitations, for three reasons: first, because of its dignity as partaking of the sovereign power of government; secondly, because it is not embraced in the terms of the statute of limitations in force in the District; and, thirdly, because if the general words of the statute are sufficiently broad to include the District, still, municipal corporations, unless specially mentioned, are not subject to the statute.

1. The first question, therefore, will be, whether the District of Columbia is, or is not, a municipal body merely, or whether it has such a sovereign character, or is so identified with or representative of the sovereignty of the United States as to be entitled to the prerogatives and exemptions of sovereignty.

In order to a better understanding of the subject under consideration, it will be proper to take a brief survey of the government of the District and the changes it has undergone since its first organization.

Prior ·to 1871, the local government of the District of Columbia, on the east side of the Potomac, had been divided between the corporations of Washington and Georgetown and the Levy Court of the county of Washington. Georgetown had been incorporated by the legislature of Maryland as early as 1789, (Davis's Laws, Dist. Col. 478,) as Alexandria had been by the legislature of Virginia, as early as 1748 and 1779 (Davis's Laws, 533, 541); and those towns or cities were clearly nothing more than ordinary municipal corporations, with the usual powers of such corporations. When the government of the United States took possession of the District in December, 1800, it was divided by Congress ·into two counties, that of Alexandria on the west side of the Potomac, and that of Washington on the east side; and the laws of Virginia were continued over the former, and the laws of Maryland over the latter; and a court, called the Circuit Court of the District of Columbia, was established with general jurisdiction, civil and criminal, to hold sessions alternately in each county; but the corporate rights of the cities of Alexandria and Georgetown, and of all other corporate bodies, were expressly left unimpaired, except as related to judicial powers. See Act of Feb. 27, 1801, 2 Stat. 103, c. 15. A supplementary act, passed a few days later, gave to the Circuit Court certain administrative powers, the same as those vested in the County and Levy Courts of Virginia and Maryland respectively; and it was declared that the magistrates to be appointed should be a board of commissioners within their respective counties, and have the same powers and perform the same duties, as the Levy Courts of Maryland. These powers related to the construction and repair of roads, bridges, ferries, the care of the poor, &c. Act of March 3, 1801, 2 Stat. 115, c. 25. On May 3, 1802, an act was passed to incorporate the city of Washington. 2 Stat. 195, c. 53. It invested the mayor and common council (the latter being elected by the white male inhabitants) with all the usual powers of municipal bodies, such as the power to pass by-laws and ordinances; powers of administration, regulation and taxation; amongst others specially named, the power "to erect and

repair bridges; to keep in repair all necessary streets, avenues, drains, and sewers, and to pass regulations necessary for the preservation of the same, agreeably to the plan of said city." Various amendments, from time to time, were made to this charter, and additional powers were conferred. A general revision of it was made by act of Congress passed May 15, 1820. 3 Stat. 583, c. 104. A further revision was made and additional powers were given by the act of May 17, 1848, 9 Stat. 223, c. 42; but nothing to change the essential character of the corporation.

The powers of the Levy Court extended more particularly to the country, outside of the cities; but also to some matters in the cities common to the whole county. It was reorganized, and its powers and duties more specifically defined, in the acts of July 1st, 1812, 2 Stat. 771, c. 117, and of March 3d, 1863, 12 Stat. 799. By the last act, the members of the court were to be nine in number, and to be appointed by the President and Senate.

In the first year of the war, August 6th, 1861, 12 Stat. 320, c. 62, an act was passed " to create a Metropolitan Police District of the District of Columbia, and to establish a Police therefor." The police had previously been appointed and regulated by the mayor and common council of Washington; but it was now deemed important that it should be under the control of the government. The act provided for the appointment of five commissioners by the President and Senate, who, together with the mayors of Washington and Georgetown, were to form the board of police for the District; and this board was invested with extraordinary powers of surveillance and guardianship of the peace.

This general review of the form of government which prevailed in the District of Columbia and city of Washington prior to 1871 is sufficient to show that it was strictly municipal in its character; and that the government of the United States, except so far as the protection of its own public buildings and property was concerned, took no part in the local government, any more than any state government interferes with the municipal administration of its cities. The officers

of the departments, even the President himself, exercised no local authority in city affairs. It is true, in consequence of the large property interests of the United States in Washington, in the public parks and buildings, the government always made some contribution to the finances of the city; but the residue was raised by taxing the inhabitants of the city and District, just as the inhabitants of all municipal bodies are taxed.

In 1871 an important modification was made in the form of the District government; a legislature was established, with all the apparatus of a distinct government. By the act of February 21st, of that year, entitled "An Act to provide a Government for the District of Columbia," 16 Stat. 419, c. 62, it was enacted (§ 1) that all that part of the territory of the United States included within the limits of the District of Columbia be created into a government by the name of the District of Columbia, by which name it was constituted "a *body corporate for municipal purposes*," with power to make contracts, sue and be sued, and "to exercise all other powers of a municipal corporation not inconsistent with the Constitution and laws of the United States." A governor and legislature were created; also a board of public works; the latter to consist of the governor as its president, and four other persons, to be appointed by the President and Senate. To this board was given the control and repair of the streets, avenues, alleys and sewers of the city of Washington, and all other works which might be intrusted to their charge by the legislative assembly or Congress. They were empowered to disburse the moneys raised for the improvement of streets, avenues, alleys and sewers, and roads and bridges, and to assess upon adjoining property, specially benefited thereby, a reasonable proportion of the cost, not exceeding one-third. The acts of this board were held to be binding on the municipality of the District in *Barnes* v. *District of Columbia*, 91 U. S. 540. It was regarded as a mere branch of the District government, though appointed by the President and not subject to the control of the District authorities.

This constitution lasted until June 20th, 1874, when an act

was passed entitled "An act for the government of the District of Columbia, and for other purposes." 18 Stat. 116, c. 337. By this act the government established by the act of 1871 was abolished, and the President, by and with the advice and consent of the Senate, was authorized to appoint a·commission, consisting of three persons, to exercise the power and authority then vested in the governor and board of public works, except as afterwards limited by the act. By a subsequent act, approved June 11th, 1878, 20 Stat. 102, c. 180, it was enacted that the District of Columbia should "*remain and continue a municipal corporation*," as provided in § 2 of the Revised Statutes relating to said District, and the appointment of commissioners was provided for, to have and to exercise similar powers given to the commissioners appointed under the act of 1874. All rights of action and suits for and against the District were expressly preserved *in statu quo.*

Under these different changes the administration of the affairs of the District of Columbia and city of Washington has gone on in much the same way, except a change in the depositaries of power, and in the extent and number of powers conferred upon them. Legislative powers have now ceased, and the municipal government is confined to mere administration. The identity of corporate existence is continued, and all actions and suits for and against the District are preserved unaffected by the changes that have occurred.

In view of these laws, the counsel of the plaintiff contend that the government of the District of Columbia is a department of the United States government, and that the corporation is a mere name, and not a person in the sense of the law, distinct from the government itself. We cannot assent to this view. It is contrary to the express language of the statutes. That language is that the District shall "remain and continue a municipal corporation," with all rights of action and suits for and against it. If it were a department of the government, how could it be sued? Can the Treasury Department be sued? or any other department? We are of opinion that the corporate capacity and corporate liabilities

of the District of Columbia remain as before, and that its character as a mere municipal corporation has not been changed. The mode of appointing its officers does not abrogate its character as a municipal body politic. We do not suppose that it is necessary to a municipal government, or to municipal responsibility, that the officers should be elected by the people. Local self-government is undoubtedly desirable where there are not forcible reasons against its exercise. But it is not required by any inexorable principle. All municipal governments are but agencies of the superior power of the State or government by which they are constituted, and are invested with only such subordinate powers of local legislation and control as the superior legislature sees fit to confer upon them. The form of those agencies and the mode of appointing officials to execute them are matters of legislative discretion. Commissioners are not unfrequently appointed by the legislature or executive of a State for the administration of municipal affairs, or some portion thereof, sometimes temporarily, sometimes permanently. It may be demanded by motives of expediency or the exigencies of the situation; by the boldness of corruption, the absence of public order and security, or the necessity of high executive ability in dealing with particular populations. Such unusual constitutions do not release the people from the duty of obedience or from taxation, or the municipal body from those liabilities to which such bodies are ordinarily subject. Protection of life and property are enjoyed, perhaps in greater degree, than they could be, in such cases, under elective magistracies; and the government of the whole people is preserved in the legislative representation of the State or general government. "Nor can it in principle," said Mr. Justice Hunt in the *Barnes* case, "be of the slightest consequence by what means these several officers are placed in their position, whether they are elected by the people of the municipality or appointed by the President or a governor. The people are the recognized source of all authority, State and municipal, and to this authority it must come at last, whether immediately or by a circuitous process." *Barnes* v. *District of Columbia*, 91 U. S. 540, 545.

One argument of the plaintiff's counsel in this connection is, that the District of Columbia is a separate State or sovereignty according to the definition of writers on public law, being a distinct political society. This position is assented to by Chief Justice Marshall, speaking for this court, in the case of *Hepburn* v. *Ellzey*, 2 Cranch, 445, 452, where the question was whether a citizen of the District could sue in the circuit courts of the United States as a citizen of a State. The court did not deny that the District of Columbia is a State in the sense of being a distinct political community; but held that the word " State " in the Constitution, where it extends the judicial power to cases between citizens of the several " States," refers to the States of the Union. It is undoubtedly true that the District of Columbia is a separate political community in a certain sense, and in that sense may be called a State; but the sovereign power of this qualified State is not lodged in the corporation of the District of Columbia, but in the government of the United States. Its supreme legislative body is Congress. The subordinate legislative powers of a municipal character which have been or may be lodged in the city corporations, or in the District corporation, do not make those bodies sovereign. Crimes committed in the District are not crimes against the District, but against the United States. Therefore, whilst the District may, in a sense, be called a State, it is such in a very qualified sense. No more than this was meant by Chief Justice Taney, when, in the *Bank of Alexandria* v. *Dyer*, 14 Pet. 141, 146, he spoke of the District of Columbia as being formed, by the acts of Congress, into one separate political community, and of the two counties composing it (Washington and Alexandria) as resembling different counties in the same State; by reason whereof it was held that parties residing in one county could not be said to be " beyond the seas," or in a different jurisdiction, in reference to the other county, though the two counties were subject to different laws.

We are clearly of opinion that the plaintiff is a municipal corporation, having a right to sue and be sued, and subject to the ordinary rules that govern the law of procedure between private persons.

2. But the Supreme Court of the District supposes that municipal corporations are not embraced in the words of the statute of limitations. Let us see whether that view can be maintained.

The statute in force in the District is that of Maryland, passed in 1715, c. 23. The act, as regards personal actions, is substantially the same as that of 21 James I. It commences with a preamble, as follows: "Forasmuch as nothing can be more essential to the peace and tranquillity of this province than the quieting the estates of the inhabitants thereof, and for the effecting of which no better measures can be taken than a limitation of time for the commencing of such actions as in the several and respective courts within this province are brought, from the time of the cause of such actions accruing." It is then enacted, "that all actions of trespass *quare clausum fregit*, all actions of trespass, detinue, sur trover, or replevin, . . . all actions of account, contract, debt, book, or upon the case, . . . all actions of debt for lending, or contract without specialty, . . . shall be sued or brought by any person or persons within this province, . . . shall be commenced or sued within the time and limitation hereafter expressed, and not after ; that is to say, the said actions of account, and the said actions upon the case, upon simple contract, . . . and the said actions for debt, detinue, and replevin . . . within three years ensuing the cause of such action, and not after ;———." 1 Kilty's Laws, April, 1715, c. 23. There is nothing in any part of the act to restrain the generality of this language : "all [enumerated] actions sued or brought by any person or persons within this province, . . . shall be commenced within three years." Corporations are "persons" in the law. There is no apparent reason why they should not be included in the statute. It is conceded that private corporations are included. On what ground, then, can municipal corporations be excluded? Not on the ground that they are not "persons," for that would exclude private corporations. They are, therefore, within the terms of the law.

3. Are they not also within the spirit and reason of the law?

They are certainly within the reason of the preamble.  It is just as much for the public interest and tranquillity that municipal corporations should be limited in the time of bringing suits as that individuals or private corporations should be.  The reason stated in the preamble for the passage of the law applies to all; and, moreover, it shows that the objects of the law are beneficent ones, and, therefore, that it should be liberally construed.  It cannot apply to the sovereign power, of course.  No restrictive laws apply to the sovereign, unless so expressed.  And especially no laws affecting a right on the ground of neglect or laches, because neglect and laches cannot be imputed to him.  And it matters not whether the sovereign be an individual monarch, or a republic or state.  The principle applies to all sovereigns.  The reason usually assigned for this prerogative is, that the sovereign is not answerable for the delinquencies of his agents.  But whatever the true reason may be, such is the general law — such the universal law, except where it is expressly waived.  The privilege, however, is a prerogative one, and cannot be challenged by any person inferior to the sovereign, whether that person be natural or corporate.

It is scarcely necessary to discuss further the question of the applicability of the statute of limitations to a purely municipal corporation when it is embraced within the general terms of the law.  It was expressly decided to be applicable in the cases of *Kennebunkport* v. *Smith*, 22 Maine, 445; *Cincinnati* v. *First Presbyterian Church*, 8 Ohio, 298; *Cincinnati* v. *Evans*, 5 Ohio St. 594; *St. Charles County* v. *Powell*, 22 Missouri, 525; *Armstrong* v. *Dalton*, 4 Devereux, (Law,) 568; and other cases cited in the notes to Wood on Limitations, § 53; and to 2 Dillon on Municipal Corporations, § 668, 3d ed.  Judge Dillon, in the section last cited, accurately says: " The doctrine is well understood, that to the sovereign power the maxim, '*nullum tempus occurrit regi*,' applies, and that the United States and the several States are not, without express words, bound by statutes of limitation.  Although municipal corporations are considered as public agencies, exercising, in behalf of the State, public duties, there are many cases which

hold that such corporations are not exempt from the operation of limitation statutes, but that such statutes, at least as respects all real and personal actions, run in favor of and against these corporations in the same manner and to the same extent as against natural persons." In *Evans* v. *Erie County*, 66 Penn. St. 222, 228, Sharswood, J., says: "That the statute of limitations runs against a county or other municipal corporation, we think, cannot be doubted. The prerogative is that of the sovereign alone; *nullum tempus occurrit reipublicae.* Her grantees, though artificial bodies created by her, are in the same category with natural persons." See also *Dundee Harbour Trustees* v. *Dougall*, 1 Macqueen H. L. Cas. 317. But we forbear to quote further authorities on the subject. We hold the doctrine to be well settled.

What may be the rule in regard to purprestures and public nuisances, by encroachments upon the highways and other public places, it is not necessary to determine. They are generally offences against the sovereign power itself, and, as such, no length of time can protect them. Where the right of property in such places is vested in the municipality, an assertion of that right may or may not be subject to the law of limitations. We express no opinion on that point, since it may be affected by considerations which are not involved in the present case.

The court below, in its opinion on the demurrer, suggests another ground, having relation to the form of the action, on which it is supposed that the plea of the statute of limitations in this case is untenable. It is this, that the action is founded on a statute, and that the statute of limitations does not apply to actions founded on statutes or other records, or specialties, but only to such as are founded on simple contract or on tort. We think, however, that the court is in error in supposing that the present action is founded on the statute. It is an action on the case upon an implied assumpsit arising out of the defendant's breach of a duty imposed by statute, and the required performance of that duty by the plaintiff in consequence. This raised an implied obligation on the part of the defendant to reimburse and pay to the plaintiff the moneys

expended in that behalf. The action is founded on this implied obligation, and not on the statute, and is really an action of assumpsit. The fact that the duty which the defendant failed to perform was a statutory one, does not make the action one upon the statute. The action is clearly one of those described in the statute of limitations. The case of *Carroll* v. *Green*, 92 U. S. 509, is strongly in point. That was a bill against stockholders of an insolvent bank to enforce their liability for double the amount of their stock, according to the provisions of the charter. It was held by this court, that the liability of the stockholders arose from their acceptance of the charter, and their implied promise to fulfil its requirements, and that the legal remedy to enforce it was an action on the case, to which the statute of limitations would apply; and, hence, that it applied to a bill in equity founded on the same obligation. To the same effect is the case of *Beatty's Administrators* v. *Burnes's Administrators*, 8 Cranch, 98, where an action for money had and received was brought, under the Maryland act of 1791, against a party who had received from the United States payment for land situated in the District, which land was claimed by the plaintiff to belong to him. This court held that, inasmuch as the form of the action was covered by the statute of limitations of Maryland, it could be pleaded in bar, notwithstanding the action was given by the statute of 1791. So, in *McCluny* v. *Silliman*, 3 Pet. 270, 277, it was held that the statute of limitations of Ohio was pleadable to an action on the case brought against a receiver of the land office to recover damages for his refusing to enter the plaintiff's application in the books of his office for certain lands in his district. It was contended that such a case could not have been contemplated by the legislature; but the court held that the action was within the terms of the statute, and that this was sufficient. Many more cases might be cited to the same point, but it is wholly unnecessary.

*The judgment must be reversed, and the cause remanded, with directions to enter judgment for the defendant on the demurrer to the pleas of the statute of limitations; and it is so ordered.*