SANTIAGO A. PANZARDI, INC., substituted by INSULAR MOTOR
  CORPORATION, Plaintiff and Appellee, *v.* JUAN G. GALLARDO,
  TREASURER OF PORTO RICO; SANTIAGO A. PANZARDI, sub-
  stituted by INSULAR MOTOR CORPORATION, Plaintiff and Ap-
  pellee, *v.* JUAN G. GALLARDO, TREASURER OF PORTO RICO;
  PACKARD MOTOR DEALERS OF PORTO RICO, substituted by

INSULAR MOTOR CORPORATION, Plaintiff and Appellee, *v.* JUAN G. GALLARDO, TREASURER OF PORTO RICO, Defendant and Appellant.

Nos. 3950, 3951 and 3952.   Argued July 12, 1926.—Decided July 29, 1926.

*The Attorney General, J. A. López Acosta* and *Felipe Janer, Jr.,* for the appellant. *Hugh R. Francis* and *Cayetano Coll Cuchi* for the appellees.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the court.

The questions involved in these three cases are exactly the same and will be considered and disposed of in a single opinion.

It is the case of a tax of five per cent *ad valorem* imposed under paragraph 18, section 18, Title II of Act No. 55 of June 15, 1919, and paid under protest. The actions were brought to obtain a refund of the taxes paid.

It seems well to transcribe here the opinion of the district court which served as a basis for the judgments appealed from. It reads as follows:

"This case was called for a hearing on the demurrer filed by the defendant. Both parties were present and after argument the case was submitted for decision. At the said hearing the defendant offered as the sole ground for the demurrer the argument that section 3 of the Foraker Act (Apr. 12, 1900, 7 Fed. Statutes Ann. 1259) is not in force and consequently the Legislature of Porto Rico had the power to impose a tax on articles introduced or brought into Porto Rico from the United States. The defendant argued that the opinion of the Supreme Court of Porto Rico on this question in the case of Benítez Sugar Co. v. Treasurer, 34 P.R.R. 33, is mere *dictum* and therefore does not bind this court to hold that the said section of the Foraker Act remained in force after the enactment of section 58 of the Jones Act (March 2, 1917, Fed. Stat. Ann. 1918, p. 508).

"Though the opinion of the Supreme Court of Porto Rico in the said case of Benítez Sugar Co. v. Treasurer of Porto Rico be mere *dictum,* nevertheless in respect to the question raised in the case at bar this court is of the opinion that it should follow the said opinion of the Supreme Court and overrule the demurrer in this case.

"There being no other question before the court and the defendant having admitted the facts as averred in the complaint and waived the right to answer, the court will proceed to render judgment for the plaintiff, without special imposition of costs."

In the said case of *Benítez Sugar Co.* v. *Treasurer,* 34 P.R.R. 33, this court, by Mr. Justice Wolf, said:

"As presented by counsel in this case, the principal question to be discussed is whether the Foraker Act, in so far as it prohibits a tax on imports, is still the law of this jurisdiction after the passage of our present Organic Act known as the Jones Act.

"The Foraker Act provided:

" 'And in no event shall any duties be collected after the first day of March, 1902, on merchandise and articles going into Porto Rico from the United States, or coming into the United States from Porto Rico.'

"Section 58 of the Jones Act says:

" 'Section 58.—That all laws or parts of laws applicable to Porto Rico not in conflict with any of the provisions of this Act, including the laws relating to tariffs, customs, and duties on importations into Porto Rico prescribed by the Act of Congress entitled "An Act temporarily to provide revenues and a civil government for Porto Rico, and for other purposes," approved April twelfth, nineteen hundred, are hereby continued in effect, and all laws and parts of laws inconsistent with the provisions of this Act are hereby repealed.'

"This section in itself would seem to continue in force the said cited section of the Foraker Act. We feel bound to hold that there is nothing in the Jones Act that by necessary implication caused a repeal of said section. We have the idea, besides, that it was the intent of Congress to make Porto Rico like the various states where duties on importations from one state to another are expressly excluded by the Constitution of the United States, as follows:

" 'Art. 1, Sec. 9, subdivision 5.—No Tax or Duty shall be laid on Articles exported from any State.

" 'Id. Section 10, subdivision 2.—No State shall, without the Consent of the Congress, lay any Imposts or Duties on Imports or

Exports, except what may be absolutely necessary for executing its inspection Laws; and the net Produce of all Duties and Imposts, laid by any State on Imports or Exports, shall be for the Use of the Treasury of the United States; and all such laws shall be subject to the Revision and Control of the Congress.'

"So much being premised, we may examine section 18 of Act No. 42 of July 1, 1921. It provides:

" 'Sec. 18.—*Motor vehicles and accessories.*—On all motor vehicles, automobiles, motorcycles, side-cars for motorcycles, motors for bicycles and launches, auto-trucks, auto-cars, electric cars, auto-tractors and tractors (excluding agricultural tractors), and on all solid or pneumatic tires, inner tubes, and on all parts and accessories for any of the articles enumerated in this paragraph, produced, manufactured, introduced or brought into Porto Rico, a tax of ten (10) per cent *ad valorem.*'

"As appellant points out, referring to the *Fantauzzi Case*, reported under the name of *Successors of C. & J. Fantauzzi* v. *Municipal Assembly of Arroyo*, 30 P.R.R. 390, these taxes sought to be imposed are clearly imposts or excises. They do not purport to be a property tax or one imposed on existing property, but the whole scheme of said section 18 is to reach specialities like manufacture or importation and the like. We agree with counsel on both sides that the mere fact that section 18 does not use the word 'import' can make no difference. To introduce or bring into Porto Rico is synonymous with importing."

We have studied the very able reasoning contained in the appellant's brief, and although we recognize its force, it does not convince us that the conclusion reached in the case of *Benítez Sugar Co., supra,* is erroneous. Under the laws in force the Legislature of Porto Rico can not impose a tax which may in fact operate, like that which gave rise to these actions, as an import duty on articles introduced into Porto Rico from the United States.

The case of *Jordán* v. *Roche,* 228 U. S. 436, cited by the appellee, does not decide the question involved. In that case the question was whether bay rum imported from Porto Rico should pay the same federal tax that had to be paid on other similar articles in the United States. And the

question was decided affirmatively. It was not a question of a tax imposed by one of the states of the Union.

The other cases cited do not solve the question involved in a sense contrary to that followed in the said case of *Benítez Sugar Co., supra.* These cases are *Rafferty* v. *Smith, Bell & Co.*, 257 U. S. 226; *United States* v. *Heinszen & Co.*, 206 U. S. 370; *Haavik* v. *Alaska Packers Ass'n*, 263 U. S. 510, and *Pacific American Fisheries* v. *Territory of Alaska*, 2 F. (2nd) 9.

The first two refer to the Philippine Islands. In the *Heinszen Case, supra,* the Supreme Court held that the Congress, in dealing with the Philippine Islands, may delegate legislative authority to such agencies as it may select and may ratify the acts of agents as fully as if such acts had been specially authorized by a prior act of the Congress, as was done by the Act of June 30, 1906, 34 Stat. 636, whereby it legalized and ratified the imposition of certain duties collected by the American authorities in the Philippine Islands prior to May 8, 1902, and in the *Rafferty Case, supra,* the Supreme Court held that "Taxes on the value of exports from the Philippine Islands collected under a Philippine Act, effective July 1, 1916, while duties on such exports were forbidden by the Act of Congress of August 29, 1916, c. 416, 39 Stat. 545, were legalized, ratified and confirmed by the Congressional Act of June 5, 1920, c. 253, 41 Stat. 1015, 1025, p. 231."

Congress has not acted with reference to the Porto Rican law. It could ratify it if that were its will; but until that will be expressed in a positive manner it is the duty of this court to hold that the Porto Rican law is contrary to the letter and spirit of the first Organic Act of the Island and there is no provision in the second Organic Act that can be construed as repealing the first in that respect.

The other two cases refer to Alaska and the question involved in them is a license tax on corporations of other states for doing business in the Territory. In the *Haavik*

*Case, supra,* it was held that "An annual poll tax, and an annual license imposed only on non-resident fishermen within Alaska are within the power delegated to the Alaska Legislature by the Organic Act," and that "These taxes, as applied to a citizen of California who went to Alaska to engage in the business of fishing and remained there, so engaged, for four months, are not in conflict with the due process clause of the Fifth Amendment, nor does the license tax, confined to non-residents, violate the 'privileges and immunities' provision (Cons., Art. IV, sec. 2,) ; nor was it arbitrary or unreasonable to favor the local residents by exempting them from it." And in the *Pacific American Fisheries Case, supra,* it was held that the Alaska Act "imposing license tax on canneries, is not invalid, as interfering with interstate commerce, as applied to foreign corporation canning fish for purpose of transportation and sale outside Alaska."

As can be seen, these cases do not establish jurisprudence whereby we may conclude that they decide, or at least clarify, the question involved in such a manner that would make us feel disposed to change our opinion.

A study of the case of *Gromer* v. *Standard Dredging Co.,* 224 U. S. 362, leads us to the same conclusion.

It may be well to end this opinion by transcribing here the following two paragraphs from the decision of the First Circuit Court of Appeals in the case of *Benedicto* v. *West India & Panama Telegraph Co.,* 256 F. 417, cited by the appellee in his brief. They read as follows:

"It is quite possible, if the intent were clear, that—under rules of liberal construction, and under such cases as Metropolitan Railroad v. District of Columbia, 132 U.S. 1, 9, 10 Sup. Ct. 19, 22 (33 L. Ed. 231), where it is said, 'It is undoubtedly true that the District of Columbia is a separate political community in a certain sense, and in that sense may be called a state'—Porto Rico might be accepted as a state for certain limited purposes, but we think it not clear under the relationship which exists between the United States and that island, and without regard to whether it is strictly that

of a possession or a quasi territory, that Congress intended to delegate to the local assembly authority to regulate rates in respect to instrumentalities of commerce between Porto Rico and the United States, and foreign countries.

\* \* \* \* \* \* \*

"The conclusion is that, while Congress, under its plenary power, had the unquestionable right to do so, it never has delegated to the legislative assembly of Porto Rico authority to regulate interpossessional, interterritorial, interstate, or foreign cable rates . . ."

The judgments appealed from should be affirmed.