510

DISTRICT OF COLUMBIA v. AMERICAN
OIL CO.
No. 4882.

Court of Appeals of District of Columbia.
Argued Feb. 6, 1930.
Decided Mar. 3, 1930.

William W. Bride and F. H. Stephens, both of Washington, D. C., for appellant.

Leo A. Rover, John W. Fihelly, and O. R. McGuire, all of Washington, D. C., amicus curiæ for the United States.

Morris Simon, Laurence Koenigsberger, Eugene Young, Selig C. Brez and Arthur G. Logan, of Baltimore, Md., for appellee.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

ROBB, Associate Justice.

Appeal from a judgment in the Supreme Court of the District overruling a demurrer to pleas to a declaration in an action to recover taxes aggregating $6,193.62 on gasoline imported into the District of Columbia by appellee (in January, February, and March of 1928) under a contract with the Secretary of the Treasury, through the General Supply Committee, a branch of the Treasury Department, section 4, Act of June 17, 1910, 36 Stat. 531 (41 USCA § 7). Appellant electing to stand on its demurrer, final judgment was entered for appellee (defendant below).

By direction of the Attorney General of the United States, the United States Attorney for the District of Columbia, by leave of court, has filed a brief as amicus curiæ, in which it is contended on behalf of the United States that the judgment below should be affirmed.

Section 4 of the Act of June 17, 1910 (36 Stat. 531 [41 USCA § 7]), provides that "all supplies of fuel, ice, stationery, and other miscellaneous supplies for the executive departments and other government establishments in Washington, when the public exigencies do not require the immediate delivery of the article, shall be advertised and contracted for by the Secretary of the Treasury. * * * There shall be a general supply committee in lieu of the board provided for in section thirty-seven hundred and nine of the Revised Statutes as amended. * * * The committee shall aid said Secretary in securing the proper fulfillment of the contracts for such supplies, for which purpose the said Secretary shall prescribe, and all departments comply with, rules providing for such examination and tests of the articles received as may be necessary for such purpose. * * * "

By section 6 of the Act of March 2, 1927 (44 Stat. 1297, 1333), making appropriations for the District, the commissioners of the District and other responsible officials, in expending appropriations for the District, are required, so far as possible, to purchase material, supplies, including food supplies and equipment, when needed, and funds are available, "in accordance with the regulations and schedules of the General Supply Committee. * * * " This provision was repeated in the District of Columbia Appropriation Act of May 21, 1928 (45 Stat. 645, 683).

Pursuant to the Act of June 17, 1910 (36 Stat. 531 [41 USCA § 7]), the Secretary of the Treasury, through the General Supply Committee, advertised for gasoline for use by various executive departments and governmental agencies in the District of Columbia, "free from District of Columbia road tax." A contract was entered into with appellee on that basis, and appellee never assumed the payment of the tax. More than

half of the gasoline furnished by appellee under this contract was delivered to and used by the District of Columbia.

Since Congress is the "supreme legislative body" for the District of Columbia (Metropolitan R. R. v. Dist. of Columbia, 132 U. S. 1, 10 S. Ct. 19, 33 L. Ed. 231; Parsons v. District of Columbia, 35 App. D. C. 326), the solution of the question whether the District may exact a tax on gasoline purchased by the Secretary of the Treasury through the General Supply Committee for use by government agencies in the District of Columbia and the District of Columbia depends upon the interpretation of the Act of April 23, 1924 (43 Stat. 106), entitled "An Act To provide for a tax on motor-vehicle fuels sold within the District of Columbia. * * *" In other words, the "case involves a mere question of statutory construction." Rodgers v. United States, 185 U. S. 83, 22 S. Ct. 582, 46 L. Ed. 816.

The taxing act imposes a tax of two cents per gallon "on all motor-vehicle fuels within the District of Columbia, sold or otherwise disposed of by an importer, or used by him in a motor vehicle operated for hire or for commercial purposes." Section 1. The proceeds of the tax, with certain exceptions, are to be paid into the treasury of the United States to the credit of the District of Columbia, and be available for appropriation by Congress exclusively for road and street improvement and repair. Section 1. An " 'importer' means any person," section 2(c), and " 'person' includes individual, partnership, corporation, and association." Section 2(d).

Invoices must be rendered by importers to all purchasers from them of motor vehicle fuel within the District, except in the cases of retail sales. Such invoices must contain a statement, printed thereon in a conspicuous place, that the liability to the District of Columbia for the tax imposed has been assumed, and that the importer has paid the tax or will pay it on or before the last day of the calendar month next succeeding the purchase. Section 5.

It is made unlawful for any person to receive or accept from any importer, except in cases of retail sales, any motor vehicle fuel, unless the statement provided for in section 5 appears upon the invoices for the fuel. Section 8.

Any person who purchases motor vehicle fuel in the District to be used for operating stationary gas engines, tractors for agricultural purposes, etc., or for any purpose other than use in a motor vehicle operated or intended to be operated upon any of the public highways of the District, on which motor vehicle fuel tax has been paid, shall be entitled to a refund upon presenting to the collector of taxes of the District a sworn statement showing such purchase, etc. For the purpose of such refunds, the collector is authorized at all times to retain in a special fund not to exceed $1,000 on deposit in a government depositary moneys paid him for such taxes. Section 10.

A registration fee of $1 shall be paid for each calendar year for each motor vehicle operated in the District of Columbia, except that for motor vehicles propelled by steam the fee shall be $15, and those propelled by electricity the fee shall be $11 per annum. Section 12.

All motor vehicles owned and officially used by the United States shall carry registration tags of the same character, and the operator of such motor vehicle shall be subject to the same regulations as apply to all other motor vehicles operating in the District, but such registration tags and registration certificates are required to be furnished without charge. Section 13.

Section 14 reads as follows: "That when under authority of law gasoline or other motor-vehicle fuel is sold by an agency of the United States within the District of Columbia, for use in privately owned vehicles, such agency of the United States shall, by agreement with the Commissioners of the District of Columbia, arrange for the collection of the tax of 2 cents per gallon herein authorized to be imposed, and for accounting to the collector of taxes of the District of Columbia for the proceeds of such tax collections."

Section 15 requires all prosecutions for violations of the provisions of the act or regulations thereunder, and all suits for the collection of any tax or penalty, to be instituted by the corporation counsel or by his assistants.

While, for convenience, the tax is levied upon the importer, it is apparent that the tax is really to be paid by the consumer. In other words, he pays the current price, plus the amount of the tax. See The Passenger Cases, 7 How. 283, 12 L. Ed. 702, where it was held that a tax laid on the master of a ship for each passenger was really "for the convenience of collection," and that "the burden evidently falls on the passenger."

To sustain the contention of appellant, it must clearly appear that the United States intended to tax itself. See Dollar Savings Bank .v. United States, 19 Wall. 227, 22 L. Ed. 80. In our view, the intent of the statute was quite the contrary. Had the United States, through its agent, the Secretary of the Treasury, purchased this gasoline from appellee in Virginia, no tax could have been exacted by that state. Panhandle Oil Co. v. Mississippi, 277 U. S. 218, 48 S. Ct. 451, 72 L. Ed. 857, 56 A. L. R. 583. Counsel for the District of Columbia, in their brief, concede that "the statute evidently contemplated that the Government should not be regarded as an importer for the purpose of a tax." Clearly the importation of gasoline by the United .States into the District of Columbia would have been tax free; because the United States is not an "importer" or "person" within the meaning of the act. An *"importer"* means any *person* who brings into, or who produces, refines, manufactures, or compounds in, the District of Columbia motor-vehicle fuel *to be sold or otherwise disposed of by him or to be used by him in a motor vehicle operated for hire or for commercial purposes"* (section 2(c); and *person* "includes individual, partnership, corporation, and association." Section 2(d). Certainly Congress did not intend to permit the United States to import gasoline tax free, and yet impose a tax if delivery to the United States by the vendor should be made here instead of across the line in Virginia. The character of the transaction would be the same in both instances, and substance and not form should control.

Under section 13, registration tags on motor vehicles "used by the United States or by the District of Columbia * * * and all registration certificates" must be furnished without charge. Under section 14, if an agency of the United States (such as the Army, Navy, or Marine Corps commissaries) sells gasoline within the District "for use in privately owned vehicles," it is required, by agreement with the commissioners of the District, to "arrange for the collection of the tax of 2 cents per gallon herein authorized to be imposed, and for accounting to the collector of taxes of the District of Columbia for the proceeds of such tax collections." It will be observed that the language is *"the* tax of 2 cents per gallon herein authorized to be imposed," clearly indicating that up to that time no tax had been imposed. If, under appellant's contention, the tax already had been exacted from the United States, there would have been no reason for imposing an additional tax. It is apparent that if *"the* tax" of 2 cents per gallon already had been imposed and collected, then on sales by an agency of the United States the purchaser would pay a tax of 4 cents instead of 2 cents. Congress did not intend such a result.

Section 1 of the act requires the proceeds of the tax to be "paid into the Treasury of the United States entirely to the credit of the District of Columbia." As to gasoline for use by the District of Columbia (and part of the gasoline here involved was so used), we cannot believe that Congress intended to impose a tax *against* the District for the *benefit* of the District. Such a transaction might be interesting from the standpoint of a bookkeeper, but it would not appeal to us as practical.

The judgment below was right, and is affirmed, with costs.

Affirmed.