**UNITED STATES, Appellant,**

v.

**Constance THOMAS et al., Appellees.**

**No. 6111.**

District of Columbia Court of Appeals.

Argued Feb. 22, 1972.

Decided June 23, 1972.

Guy H. Cunningham, III, Asst. U. S. Atty., with whom Harold H. Titus, Jr., U. S. Atty., John A. Terry and Richard L. Beizer, Asst. U. S. Attys., were on the brief, for appellant.

Steven P. Lockman, appointed by this court, with whom Joseph Roland Copeland, William W. Taylor, III, and Joel H. Skirble, were on the brief, for appellees.

Before HOOD, Chief Judge, and KELLY and NEBEKER, Associate Judges.

NEBEKER, Associate Judge:

This appeal, brought by the Government from an adverse ruling on a motion to suppress, presents a question as to the nature of the averments required for the issuance of a nighttime search warrant pursuant to 21 U.S.C. § 879(a) (1970).[1] The Government contends that such a search warrant requires a showing of probable cause. The trial court in rejecting the Government's view required more than was shown and ruled that there was no "probable cause to believe that grounds existed" for nighttime execution and that there was no showing that successful daytime execution was impossible.[2] We hold that

---

1. This provision is part of the Controlled Substances Act which represents a national effort by Congress to aid in correcting and controlling use of narcotics and other similar deleterious substances. It provides:

    "A search warrant relating to offenses involving controlled substances may be served at any time of the day or night if the judge or United States magistrate issuing the warrant is satisfied that there is probable cause to believe that grounds exist for the warrant and for its service at such time."

2. What additional "probable cause" would reasonably justify a nighttime search is impossible to determine. It is assumed that the trial court actually had in mind a showing, which was stated in the alternative, that only nighttime execution would be effective or that the contraband would be removed.

    The dissent, without elaboration, reaches the conclusion that there was no "probable cause for its service at night." It is not denied, nor could it be, that the warrant was generally supported by a showing of probable cause. In what way that showing is deemed to have disappeared with the sun is not explained any more in the dissent than in the trial judge's order. There is not the slightest indication that this narcotics operation was limited to the daytime.

a search warrant, issued pursuant to § 879(a) on a showing of probable cause to believe that grounds exist for the warrant, may be executed at night on a similar showing of probable cause that the items sought are present at such time. The trial court's order granting the motion to suppress is therefore reversed and the case remanded for further proceedings.

Officers of the Metropolitan Police Department and a reliable informant confirmed a report that narcotics were seen and being sold at a second floor premises by allowing the informant to make a controlled purchase of narcotics therein. The described purchase and subsequent field test were recited in an affidavit presented to a United States magistrate for the District of Columbia in support of a request for a search warrant which was based on § 879 (a). The warrant, permitting day or nighttime execution, was issued on the basis that there was "reason to believe" the premises contained contraband. The warrant was executed two days thereafter at 9:40 p. m. by the Metropolitan Police officers. Narcotics and narcotic paraphernalia were found and appellees were charged with violations of various sections of the D.C. Code [3] as a result of their presence at the premises.[4]

Appellees, in their motion to suppress, contended that the warrant and supporting affidavit did not comply with the specific provisions of D.C.Code 1967, §§ 23–521(f) (5) and 23–522(c) (1) (Supp. IV, 1971), which they urged are impliedly incorporated in 21 U.S.C. § 879(a) (1970). They relied, and do so here, on United States v.

Gooding, 328 F.Supp. 1005, (D.D.C.1971). In the cases now before us, the trial court concluded:

> "There was no basis in the affidavit for issuance of a warrant authorizing search at night under either 21 U.S.C. § 879(a) or D.C.Code 521(f) (5)."

The phrase, "and for its service at such time", in 21 U.S.C. § 879(a) (*see* footnote 1, *supra*), was viewed by the trial court as requiring a compelling need for execution at night. We believe that in proper context it must be viewed as language requiring only a determination that the facts showing probable cause reasonably justify execution "at such time" as permitted by the magistrate. Accordingly, and with deference to the decision in United States v. Gooding, *supra*, we conclude that the warrant was valid and that the special provisions of § 879(a) control in this case notwithstanding the general provisions of D.C.Code 1967, §§ 23–521–523 (Supp. IV, 1971).

In *Gooding* the District of Columbia nighttime search warrant provisions of § 23–522(c) (1) were viewed as "special or local" in order to support the conclusion that those provisions modified or qualified the "general" federal nighttime provision of § 879(a). We think it more in harmony with the obvious intent of Congress to give special treatment to narcotics law enforcement to view such provisions as the "special" ones (including D.C.Code 1967, § 33–414(h)) not subject to qualification by the general search warrant provisions of the U.S. and D.C.Codes (Rule 41(c), Federal

---

3. Appellees Thomas and Spurlock were charged with violations of D.C.Code 1967, § 22–1515(a) (presence in illegal establishment) while appellee Kenley was charged with violations of D.C.Code 1967, § 22–3601 (possession of implements of crime), D.C.Code 1967, § 33–402 (possession of heroin), and D.C.Code 1967, § 33–416 (maintaining a common nuisance).

4. The record also reveals that at the suppression hearing the Government sought to establish that appellees were trespassers at the premises described in the search warrant, thereby eliminating appellees' standing to raise questions dealing with the validity of the warrant. *See* Brooks v. United States, D.C.App., 263 A.2d 45 (1970). However, the trial court judge refused to accept certain hearsay evidence offered by the Government on the question of whether appellees were rightfully on the premises. This ruling is not presented to us and we proceed, as did the trial court, on the assumption that lack of standing was not established.

Rules of Criminal Procedure, and § 23–522 (c) (1)). The "special" area of legislation is narcotics law enforcement, not District of Columbia law enforcement. The latter, consistent with federal enforcement policy, has been given general treatment in § 522 (c) (1) and special treatment (narcotics) in § 33–414(h). *Gooding* assumed "a conflict so irreconcilable that the two acts cannot stand together" (1 Sutherland, Statutory Construction § 2022 n. 2 (3d ed. 1943)) when no conflict exists if the over-all congressional policy is recognized.

In resolving this question of statutory interpretation the legislative history of § 879 is most helpful. Pub.L. No. 91–513 entitled "Comprehensive Drug Abuse Prevention and Control Act of 1970", of which § 879 is a part, had as its primary goal the collection of several provisions of the United States Code relating to drug problems into one title of the Code. Section 879(a) of Title 21 was in substance the reenactment of former 18 U.S.C. § 1405 with some modified language. The latter was also a special provision relaxing the nighttime positivity standard under Fed.R.Crim.P. 41

(c) respecting narcotics law enforcement under the Narcotic Control Act of 1956.[5] No change was intended in application or meaning of § 1405 with the enactment of the new 21 U.S.C. § 879(a).[6] The explanation given by Congress in respect to the nighttime search warrant provision enacted in 1956 was:

"The restrictions which now govern the issuance of night search warrants [Rule 41(c)] would be liberalized so that a search warrant could be issued [executed] at any time of the day or night if the judge or the commissioner issuing the warrant is satisfied that there is probable cause to believe that the grounds for the application exist." United States Code Congressional and Administrative News, 84th Cong., 2d Sess. p. 3276 (1956).

During the same session of Congress § 33–414(h) of the D.C.Code was amended to conform with the new federal narcotics search warrant provisions. The result is that the same standards relating to the narcotic and general search warrant provisions exist in the D.C.Code.[7]

---

5. United States v. Stallings, 413 F.2d 200 (7th Cir. 1969). *See also* United States v. Gooding, 328 F.Supp. 1005, 1007 (D. D.C. 1971).

6. The legislative history of both Houses of Congress reveals that the provisions of 21 U.S.C. § 879(a) (1970) were intended to incorporate the former 18 U.S.C. § 1405 and its interpretation. *See* Report of the Comm. on the Judiciary, United States Senate, Controlled Dangerous Substances Act of 1969, S.Rep.No. 613, 91st Cong., 1st Sess. 30–31 (1969) ; Report of the Comm. on Interstate and Foreign Commerce, House of Representatives, Comprehensive Drug Abuse Prevention and Control Act of 1970, H.R.Rep. No. 91–1444, 91st Cong., 2d Sess. 54 (1970).

7. D.C.Code 1967, § 33–414 (Supp. IV, 1971), dealing with narcotic offenses states in pertinent part:

   *　　*　　*　　*　　*

   "(b) A search warrant cannot be issued but upon *probable cause* supported by affidavit particularly describing the property and the place to be searched." [Emphasis supplied.]

   *　　*　　*　　*　　*

   "(h) The judge or commissioner *shall* insert a direction in the warrant that it may be served at anytime in the day or night." [Emphasis supplied.]
   The general search warrant provisions found in Title 23 of the D.C.Code set forth a stricter standard for nighttime search warrant executions.
   D.C.Code 1967, § 23–521(f) (Supp. IV, 1971) provides in part:
   "A search warrant shall contain—"

   *　　*　　*　　*　　*

   "(5) a direction that the warrant be executed during the hours of daylight or, where the judicial officer has found cause therefor, including one of the grounds set forth in section 23–522(c) (1), an authorization for execution at any time of day or night;"
   D.C.Code 1967, § 23–522(c) (Supp. IV, 1971) provides in part:
   "The application [for search warrant] may also contain—
   (1) a request that the search warrant be made executable at any hour of the day or night, upon the ground that there is probable cause to believe that (A)

Thus, it is apparent that each statutory scheme provides generally for nighttime search warrants with a further showing than probable cause. Likewise, each statutory scheme allows the issuance of a search warrant for day or nighttime searches on the more relaxed finding of time-related probable cause when dealing with narcotics law violations. The special laws dealing with narcotics and drug problems must, under familiar rules of statutory construction, be viewed as controlling over the general search warrant provisions in the area of otherwise apparent conflict.[8] Thus, any apparent literal conflict between the federal and local search warrant provisions is eliminated and appropriate meaning given to both statutory provisions.[9] As the dissent observes, this conclusion is consistent with United States v. Green, 331 F. Supp. 44 (D.D.C.1971), which is in direct conflict with United States v. Gooding, *supra.*

■ Appellees argue that in any event the trial court's order granting the motion to suppress can be sustained because Congress has denied members of the Metropolitan Police Department the authority to execute search warrants for violations of 21 U.S.C. § 879(a), the Controlled Substances Act. This allegation is based upon

it cannot be executed during the hours of daylight, (B) the property sought is likely to be removed or destroyed if not seized forthwith, or (C) the property sought is not likely to be found except at certain times or in certain circumstances; . . . "

These stricter general standards are a refinement on the positivity requirement of Fed.R.Crim.P. 41 and are consistent with the law developed under that Rule and under its predecessors. *See* Espionage Act of 1917, tit. XI, §§ 3 and 10, 40 Stat. 228, 229. *Compare* In re Hollywood Cabaret, 5 F.2d 651, 653 (2d Cir. 1924) (A. Hand, J.).

8. Moreover, under this construction the various search warrant provisions in both the local and federal statutory schemes are removed from the "bramblebush of uncertainties and contradictions" and given meaning and effect consistent with the intent of Congress. *See contra,* United States v. Gooding, 328 F.Supp. 1005, 1008 (D.D.C.1971).

The following comparative outline depicts the various standards required for obtaining search warrants allowing nighttime execution within the District of Columbia:

| Search Warrant for Nighttime Execution | Federal Standards | Local Standards (*See* note 7, *supra*) |
|---|---|---|
| Narcotics related warrants | 21 U.S.C. § 879 (a) (1970) (probable cause) | D.C. Code 1967, § 33–414 (Supp. IV, 1971) (probable cause) |
| General warrants | Fed. R. Crim. P. 41(c) (positivity that property is where it is averred to be) | D.C. Code 1967, §§ 23–521(f) (5) & 23–522(c) (1) (Supp. IV, 1971) (probable cause as to (A) impossibility of daytime execution; or (B) necessity for "forthwith" seizure to avoid removal or destruction of property; or (C) time or circumstance factors limiting presence of property in place averred) |

9. With this construction, it is unnecessary to resort to 21 U.S.C. §§ 802(24) and 903 (1970) to resolve state/federal "conflicts" in favor of the federal law. The opinion in United States v. Gooding, *supra* note 8, in resolving the assumed irreconcilable conflict between District of Columbia and federal law, does not take cognizance of the command of sections 802(24) and 903.

the fact that when § 879 was enacted to replace the former 18 U.S.C. § 1405 the specific grant of authority in § 1405 given to Metropolitan Police of the District of Columbia to execute federal narcotics warrants was not carried forward. We do not view this as compelling the result appellees suggest. Even assuming failure to carry forward this provision to be of some significance, we doubt the standing of appellees to complain on this point. At most, such assumed lack of official authority or duty could not be viewed as creating a right in narcotics offenders to be free of law enforcement efforts of our local police in this area of applicable federal law. We will not impute to Congress, in enacting this most recent and comprehensive effort at drug control, an intent to curtail existing enforcement activities of those who have more general duties in addition. In the event Congress so intended, it most surely would not have left such an important step to conjecture or inference in lieu of a positive expression of intent.

In any event, the Metropolitan Police have been given the authority to execute any warrant issued in the District of Columbia. D.C.Code 1967, § 4–138 provides in part:

"Any warrant for search or arrest, issued by any magistrate of the District, may be executed in any part of the District by any member of the police force, . . ."

Under provisions describing "magistrates" or "judicial officers" relating to local search warrants, the judges of the Superior Court of the District of Columbia, or the United States District Court for the District of Columbia, or a U.S. commissioner or magistrate for the District of Columbia are all described as having power to issue such warrants.[10] Clearly, the officers of the Metropolitan Police Department have the authority to execute any warrant issued by such magistrates.

Therefore this warrant properly fell within the executing officers' duties.

Moreover, although the Metropolitan Police Department might be viewed as a "local" law enforcement body, this fact does not limit its authority to enforce laws of the United States. Indeed, the officers of the Metropolitan Police Department have been charged with the responsibility of "cooperat[ing] with Federal police agencies in the enforcement of Federal laws." Organization Order No. 153, (66–1727, Nov. 10, 1966), D.C.Code 1967, Title 1, Appendix at 180. Under the Federal Rules of Criminal Procedure, Rule 41(c), this fact is sufficient to qualify Metropolitan Police officers as "civil officer[s] of the United States authorized to enforce *or assist in enforcing* any law thereof . . ." [Emphasis supplied.] Such civil officers have the authority to execute federal search warrants issued under Rule 41. In addition, the law enforcement activities of the Metropolitan Police Department are chiefly the enforcement of United States' laws because "[c]rimes committed in the District are not crimes against the District, but against the United States." Metropolitan R. R. Co. v. District of Columbia, 132 U.S. 1, 9, 10 S.Ct. 19, 22, 33 L.Ed. 231 (1889). *See also* United States v. Cella, 37 App.D.C. 423 (1911). Because the Metropolitan Police are charged with enforcing the laws of the same sovereign which created the federal and local laws relating to search warrants and narcotics laws, we find nothing illegal in having Metropolitan Police officers execute search warrants issued pursuant to federal law as distinguished from District of Columbia law. The order appealed from is reversed and the case is remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

KELLY, Associate Judge (dissenting):

In essence, the trial court found that a United States magistrate had issued a war-

---

10. D.C.Code 1967, § 23–501(1) (Supp. IV, 1971).

rant authorizing a search of the second floor premises at 1340 Kenyon Street, N. W., at "anytime in the day or night", upon an affidavit evidencing a reasonable belief that narcotic drugs and paraphernalia were concealed on the premises in violation of 21 U.S.C. 841(a); that the affidavit contained no facts showing probable cause for its nighttime service, and that "[t]here was no basis in the affidavit for issuance of a warrant authorizing search at night under either 21 U.S.C. 879(a) or 23 D.C.Code 521(f) (5)". Accordingly, the court granted appellees' motions to suppress.

The Government here concedes that the criteria for a nighttime search pursuant to D.C.Code 1967, §§ 23-521(f) (5), 522(c) (1) and 523(b) (Supp. V, 1972) were not met but argues, and the majority appears to agree, that these sections have no application to warrants issued for violations of federal or local narcotics laws.[1]

In my judgment, however, it is unnecessary to determine this debatable issue,[2] for it seems clear to me that there was a failure here to comply with the warrant provisions of the Controlled Substances Act, pursuant to which the instant warrant issued. The applicable section of the United States Code, 21 U.S.C. 879(a), provides:

A search warrant relating to offenses involving controlled substances may be

served at any time of the day or night if the judge or United States magistrate issuing the warrant is satisfied that there is probable cause to believe that grounds exist for the warrant *and for its service at such time.* (Emphasis supplied.)

Thus, the statute requires that authorization for nighttime service of an 879(a) search warrant rest upon a showing of probable cause that grounds exist for the warrant and of probable cause for its service at night.[3]

The majority states that Section 879(a) is simply a reenactment of former 18 U.S.C. 1405,[4] "with some modified language" but with no change in application or meaning intended. It finds support for this view in legislative history, one sentence of which reads that:

Subsection (a) of this section incorporates 18 U.S.C. 1405 and authorizes service of a search warrant at any time of the day or night if probable cause has been established to the satisfaction of the Judge or U.S. magistrate issuing the warrant.[5]

As the two statutory provisions are not identical, Congress must have intended, as it says it did, that Section 879(a) incorporate the provisions of 18 U.S.C. § 1405 but also to add a further requirement au-

---

1. This argument is advanced despite the fact that Section 23–521(d) (2) authorizes seizure of property, pursuant to a warrant, which "is contraband or otherwise illegally possessed". Moreover, Section 23–521(f) (6) sets out the procedure for obtaining judicial authorization of search and arrest warrants under the controversial "no-knock" provision of the statute (Section 23–591(c)) which was designed in part to help combat the high incidence of narcotic violations in this jurisdiction.

2. *Compare* United States v. Gooding, 328 F.Supp. 1005 (D.D.C.1971) *with* United States v. Green, 331 F.Supp. 44 (D.D.C. 1971).

3. United States v. Green, *supra.* *Contra,* United States v. Gooding, *supra.*

4. § 1405. Issuance of search warrants— procedure

(1) a search warrant may be served at any time of the day or night if the judge or the United States Commissioner issuing the warrant is satisfied that there is probable cause to believe that the grounds for the application exist, and

(2) a search warrant may be directed to any officer of the Metropolitan Police of the District of Columbia authorized to enforce or assist in enforcing a violation of any such provisions.

5. Report of the Comm. on the Judiciary, United States Senate, Controlled Dangerous Substances Act of 1969, S.Rep.No.613, 91st Cong., 1st Sess. 30–31 (1969); Report of the Comm. on Interstate and Foreign Commerce, House of Representatives, Comprehensive Drug Abuse Prevention and Control Act of 1970, H.R.Rep.No. 91–1444, 91st Cong., 2d Sess. 54 (1970).

thorizing service of a warrant at night only on a showing of probable cause. To me, to hold otherwise makes the added phrase in Section 879(a) meaningless.

I would affirm the order of the trial court granting the motions to suppress.[6]

6. It is thus unnecessary to discuss appellees' contention that only personnel of the Bureau of Narcotics and Dangerous Drugs may execute § 879(a) search warrants since the authority of the District of Columbia police to execute federal narcotic warrants was withdrawn upon the repeal of 18 U.S.C. 1405(2).