**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Eulice STALLINGS, William Earl**
**Wilson, Defendants-Appellants.**

**No. 17285.**

United States Court of Appeals
Seventh Circuit.

July 8, 1969.

Rehearing Denied Aug. 1, 1969.

Palmer K. Ward, Indianapolis, Ind., for defendants-appellants.

K. Edwin Applegate, U. S. Atty., Daniel P. Byron, Asst. U. S. Atty., Indianapolis, Ind., for plaintiff-appellee.

Before FAIRCHILD and KERNER, Circuit Judges, and ESCHBACH, District Judge.[1]

ESCHBACH, District Judge.

After a joint trial, defendant Eulice Stallings was found guilty of six offenses in violation of the federal narcotics laws, 26 U.S.C. § 4704(a) and 21 U.S.C. § 174, and defendant William Earl Wilson was found guilty of two offenses in violation of 26 U.S.C. § 4704(a). Stallings was sentenced to a term of five years as to one count and six years as to the remaining five counts; the sentences to run concurrently. Wilson was sentenced to a term of three years as to each count; the sentences to run concurrently, with only one year to be served and the remainder of the sentence to be suspended. Both defendants appeal from their conviction. We affirm.

In their joint brief, defendants contend that their rights under the Fourth Amendment were abridged by the district court's refusal to (1) grant defendant Stallings' pretrial motion to quash the search warrant and (2) grant both defendants' pretrial motion to suppress evidence allegedly seized by virtue of arrests and searches not based upon probable cause.

The testimony taken in the light most favorable to the Government, Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942), is as follows: Defendants were arrested on February 23, 1967 by Lieutenant Jones and Sergeant Ward of the Indianapolis Police Department and Agent Rankin of the Federal Bureau of Narcotics. At the time the arrests were made, both Lieutenant Jones and Agent Rankin possessed considerable information about defendant Stallings' suspected narcotics activities. Jones had been in contact with an informant concerning Stallings' suspected narcotics sales. Jones had known the informant for some seven years and had previously been provided at least four tips which had resulted in successful criminal convictions. Moreover, the informant, who was a known narcotic addict, had personally purchased narcotics from Stallings during the two-month period immediately preceding the arrests. On the day prior to the day of the arrest, Stallings had told the informant that he was preparing to travel to Chicago sometime the next day (February 23) to replenish his supply of heroin and cocaine. About noon the next day, the informant advised Jones and Rankin that Stallings had in fact left for Chicago early that morning, and gave the officers both a detailed description of the automobile Stallings was driving and the information obtained from Stallings' wife that Stallings would be returning at about 6 p. m. on that same day. An independent check by police revealed that the automobile described by the informant was registered in the name of Stallings' wife, living at

1. District Judge from the United States District Court for the Northern District of Indiana, sitting by designation.

Stallings' address. Furthermore, a four to five-month police surveillance of Stallings' residence, in part conducted by Jones, had revealed frequent visits by known drug addicts.

Possessed of the above information, Agent Rankin obtained both an arrest warrant and a search warrant for a search of Stallings' residence on February 23, 1967, the day of arrest. At approximately 6 p. m., while Rankin, Lt. Jones and Sgt. Ward waited in a police car parked in an alley near Stallings' residence, Stallings appeared driving his automobile toward his home with an unidentified passenger. The officers approached Stallings' automobile in their marked police car. Upon seeing the officers, the passenger, later identified as Wilson, quickly reached for a coat in the back seat and, fumbling with his hands, put it on his lap in front. Both defendants hastily locked all the car doors. The defendants pulled to a stop and after the officers identified themselves, both defendants were placed under arrest and then searched. A pistol was found in Wilson's pocket, and two large plastic bags were found on Wilson's side of the automobile, which upon inspection were revealed to contain narcotics.

Immediately after the arrest, Jones and Rankin went to Stallings' residence, walked up the stairs to his upstairs apartment and opened an unlocked door. After identifying themselves to Mrs. Stallings, they produced and read the search warrant and informed Mrs. Stallings of the previous arrests. Mrs. Stallings pointed underneath a bed, which disclosed three loaded pistols and a quantity of narcotics, including heroin, cocaine, and hashish. A copy of the warrant, together with a receipt for the seized items, were left with Mrs. Stallings.

*Probable Cause for Arrest of Stallings*

■ Defendant Stallings contends that the arresting officers were without probable cause for his arrest, and therefore all evidence seized as a result of such unlawful arrest should have been suppressed. We pass, without deciding, the question of whether or not the arrest warrant and supporting affidavit were sufficient in themselves to support a finding of probable cause for arrest. Rather, we treat the arrests as based upon probable cause to believe that a felony was being committed in the arresting officers' presence and hold that in fact such probable cause for belief existed at the time of the arrest. The arrests were valid, therefore, regardless of whether or not the arrest warrant and supporting affidavit were technically valid. Go-Bart Importing Co. v. United States, 282 U.S. 344, 51 S.Ct. 153, 75 L.Ed. 374 (1930).

■ Probable cause for arrest exists where "the facts and circumstances within [the arresting officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that" an offense has been or is being committed. Draper v. United States, 358 U.S. 307, 313, 79 S.Ct. 329, 333, 3 L.Ed.2d 327 (1959).

In *Draper*, a federal narcotics agent had received a tip from a reliable informant that the defendant was to arrive from Chicago on either one of two morning trains. The informant had provided a detailed description of the defendant's physical attributes, the type of clothing he would be wearing, and the fact that the defendant would be carrying a tan zipper bag and would be walking in a very hasty manner. Acting on this tip, the narcotics agent met the first train due in from Chicago, saw a man alight from the train who exactly fit the description given by the informant. The man was carrying a tan zipper bag and began walking hastily toward an exit, whereupon the arrest was made and the suspected narcotics seized. The United States Supreme Court held that, based upon the above *personal* verifications by the agent of the informant's detailed tip, there existed probable cause and reasonable ground to believe that the defendant was committing a violation of the

narcotics laws at the time he was arrested.

■ The record facts in the instant case supporting a finding of probable cause for arrest are strikingly similar to, and in several respects more convincing than, the facts in *Draper*. Here, the arresting officers were relying on an informant who not only had been proven reliable on several prior occasions, but who also had had personal contact, through purchases, conversations, and observations, with the defendant. Here the informant's tip, both as to defendant's general narcotics activities and particularly his Chicago trip, was tested and corroborated by the police in at least four separate instances: (1) By investigating the license number provided by the informant and discovering such license belonged to an automobile registered to Stallings wife; (2) by observing known addicts frequenting Stallings' residence, which suggested highly suspicious criminal activity; (3) by observing Stallings' return to his residence at the precise time and in the very car the informant had described; and (4) by observing the furtive and anxious conduct of Wilson in reaching for his coat, and of Stallings in nervously looking around, and of both of them in locking all the car doors upon seeing the officers approach. With the informant's information being thus personally verified, the arresting officers had reasonable grounds to believe that the one remaining *unverified* piece of the informant's information—that Stallings would be in unlawful possession of narcotics—was likewise true.

*Probable Cause for Arrest of Wilson*

■ Defendant Wilson contends that, notwithstanding any finding of probable cause for the arrest of Stallings, no probable cause was shown to exist for his arrest, since the arresting officers admittedly had no warrant for Wilson's arrest and possessed no knowledge relevant to Wilson's identity or possible narcotics activity. Defendant, however, misconceives the nature and extent of the probable cause for Stallings' arrest as it relates to Wilson's apprehension. The arresting officers, as previously demonstrated, had more than ample grounds for belief that Stallings was returning from a trip to Chicago with a large amount of narcotics, particularly heroin and cocaine, secreted somewhere on his person or in his automobile. His indicated arrival time was almost perfectly corroborated by their own visual observations of Stallings' returning automobile, and largely verified the informant's tip and their own suspicions that Stallings was observing an ordered and precise time schedule. Reasonable caution, aided by the experience and the trustworthy information already possessed by both Agent Rankin and Lt. Jones, would dictate that Stallings might well have selected a riding companion in order to provide protection for both the funds required for the purchase in Chicago and the quantity of narcotics being returned. Both officers testified that it was common practice in the illegal narcotics trade for distributors to use such "shotgun riders" for protection on purchasing trips. Any remaining doubts as to the assumed knowledge and duplicity of Stallings' unidentified passenger were convincingly removed by the passenger Wilson's furtive, anxious and manifestly evasive conduct, prompted, no doubt, by the sudden and unexpected appearance of the arresting officers. McCray v. Illinois, 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967); *cf.* Henry v. United States, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959). Certainly the exigencies of the situation provided abundant support for the officers' conclusion that Wilson was either personally in possession of narcotics or was actively aiding and abetting Stallings in the latter's unlawful possession. *See* Warden, Maryland Penitentiary v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967). Under either conclusion, there was prob-

able cause for Wilson's arrest.[2] And because the arrest was based upon probable cause, the subsequent search and seizure of the pistol and plastic bags of narcotics were properly incidental to such valid arrest. McCray v. Illinois, 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967); Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 2 L.Ed.2d 327 (1959).

*Probable Cause for Issuance of Search Warrant*

Defendant Stallings next contends that the search warrant and supporting affidavit issued some few hours prior to the arrests did not cite sufficient facts to establish probable cause to believe that narcotics were contained in the described Stallings' residence, citing Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).

The affidavit executed by Agent Rankin before the United States Commissioner included, among other things, the following allegations:

1. Agent Rankin had reason to believe that certain described narcotic drugs were being concealed in Stallings' upstairs apartment.

2. The apartment was located at 2850½ North Central, with an entrance on the north side of a large, three-story, white frame building.

3. A police surveillance during the past two months had disclosed the presence of known narcotic users at Stallings' residence.

4. Stallings had sold drugs to an informant of both the Indianapolis Police Department and the Federal Bureau of Narcotics during the past two months in violation of 26 U.S.C. § 4704(a).

5. Stallings had told the informant that he was preparing to travel to Chicago sometime on February 23 to replenish his supply of heroin and cocaine.

6. The informant advised the affiant, Agent Rankin, at noon on February 23 that Stallings had in fact departed for Chicago early that morning because he was out of cocaine.

7. The informant particularly described the make, color, year, and license number of the automobile Stallings was driving.

8. The automobile was shown to be registered to Stallings' wife at the same address.

■ In passing on the validity of a search warrant, a reviewing court may consider *only* information brought to the magistrate's attention, Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), which in this case restricts this court's inquiry to the above eight items in the affidavit. Defendant specifically contends that the informant here involved was not shown to be reliable, that the affidavit reflects no attempt to support the credibility of the informant, and that the information furnished by the informant suggests only innocent-seeming activity and conduct devoid of everything but mere police suspicions. Defendant further asserts that the affidavit is based solely on the hearsay of an unidentified informant who, as subsequent testimony revealed, had never before been used by Agent Rankin, and who therefore could not be considered a credible informant.

Before addressing each of defendant's contentions, it is well to delineate certain propositions concerning the sufficiency of supporting affidavits as they relate to the affidavit in the instant case. The United States Supreme Court has held that "[a]n affidavit is not to be deemed insufficient * * * so long as a substantial basis for crediting the hearsay is presented." Jones v. United States, 362 U.S. 257, 269, 80 S.Ct. 725, 735, 4 L.Ed.2d 697 (1960). The Supreme

---

2. For a more complete discussion of problems of probable cause in such situations where automobiles are involved, see Landau, Freedom of the Road: Public Safety v. Private Right, 14 DePaul L.Rev. 381, 394–99, esp. 398 n. 111 (1965).

Court amplified this requirement of substantially crediting any hearsay in *Aguilar* by establishing a "two-pronged" test which includes (1) the requirement that the affidavit set forth the "underlying circumstances" from which the informer concluded that the defendant was engaging in criminal conduct and (2) the requirement that the affiant-officer attempt to support his claim that the informant was credible or his information reliable by independent corroboration. Moreover, while the magistrate is obliged to render a judgment based upon a common-sense reading of the entire affidavit, United States v. Ventresca, 380 U.S. 102, 108, 85 S.Ct. 741, 13 L.Ed.2d 684 (1964), the Supreme Court recently held that the allegations detailing the independent police investigation and corroboration must suggest *criminal* conduct and "permit the suspicions engendered by the informer's report to ripen into a judgment that a crime was probably being committed." Spinelli v. United States, 393 U.S. at 418, 89 S.Ct., at 590 (1969).

In *Spinelli,* the affidavit was found to be defective for the reason that it contained, in essence, only the following allegations: That the FBI had tracked the defendant for five days and observed him park near a particular apartment building; that on one day he entered a particular apartment in the building; that the apartment had two telephones; that the defendant was a "known" bookmaker and associate of gamblers; and that a reliable informant had said that the defendant was conducting wagering operations through the telephone numbers assigned to the apartment defendant was seen to be entering. The Supreme Court held first that because there was no showing of *how* the informant had received his information, there was a failure to meet the "underlying circumstances" test of *Aguilar* and, secondly, the independent, corroborating investigation of the FBI was defective in that even in light of the informant's information, it reflected only "innocent seeming activity and data." The opin-

ion further noted that travels to and from an apartment building hardly bespeak gambling activity, nor is there anything unusual in the fact that an apartment has two telephones, since this is a very common, petty luxury of many householders.

■ The facts of the record in the instant case, however, reveal that the affidavit herein at issue more than satisfies the *Aguilar* and *Spinelli* tests. The affidavit clearly sets forth the underlying circumstances involved in the informant's obtaining the furnished information and includes both evidence of illegal purchases from and conversations with the defendant Stallings. *Compare* United States v. Davis, 402 F.2d 171, 173–174 (7th Cir. 1968) in which the "'underlying circumstances' by which his informer came by the knowledge which he claimed to have" were not shown. *Id.* at 174. The informant's reliability, while not expressly stated, could be inferentially established through the affiant Rankin's description of him as "an informant of [both] the Indianapolis Police Department and the Federal Bureau of Narcotics" during a two-month period, as well as from Rankin's statement of the fact that the informant had been actually purchasing unlawful drugs from Stallings during this period.

The requisite independent, corroborative investigation revealed at least three facts of the type wholly absent in the *Spinelli* affidavit. One, the informant's detailed description of Stallings' automobile was shown to be accurate through a subsequent check of the license number records, disclosing the fact that the automobile was titled to Stallings' wife, at the same address. Two, Stallings actually was selling illegal narcotics to the informant while Stallings' residence was under police surveillance, which clearly reflected something more than innocent-seeming conduct. And, three, this "aura of suspicion" created by Stallings' sales to the informant was further strengthened by other visits to Stallings' residence of known drug

users. We are mindful that the assertion of visits by "known drug users" may not be significantly different from the assertion in *Spinelli* regarding "known gambling associates." However, the assertion in the instant case is entitled to greater weight and consideration because, unlike the unsupported assertions in *Spinelli*, the *source* of the assertions here was clearly revealed to be a two-month police surveillance of Stallings' residence, a surveillance which had *also* disclosed evidence of visits by and actual sales to a police informant shown *pro tanto* to be reliable.

## Form of the Search Warrant

■ Defendant Stallings contends further that the search warrant and supporting affidavit were defective by reason that the former improperly authorized a search at any time of the day or night, while the latter contained only the statement that the affiant "has reason to believe" that the premises to be searched contained unlawfully possessed drugs, citing Nathanson v. United States, 290 U.S. 41, 54 S.Ct. 11, 78 L.Ed. 159 (1933).

In regard to this contention that the search warrant improperly authorized both a day and nighttime search in alleged violation of Fed.R.Cr.P. 41(c), it must be recognized that Section (g) of Rule 41 expressly states that the rule does not modify any *act*, inconsistent with it, regulating searches for which special provisions are made. 18 U.S.C. § 1405(1) is such an act and includes special provisions for narcotic searches. United States v. Tucker, 262 F.Supp. 305, 308 (S.D.N.Y.1966). Therefore Rule 41(c)'s requirement that the affidavits be "positive," as distinct from expressing mere "reason to believe" before a day and nighttime search warrant may be issued, is inapplicable to the affidavit in the instant case.

The judgment of conviction of both defendants is affirmed.

Affirmed.

FAIRCHILD, Circuit Judge (concurring).

Convictions on various counts which do not rest upon evidence obtained under the search warrant support the sentences imposed. I concur in affirmance as to those counts.

I respectfully disagree with the decision that the affidavit used in obtaining the search warrant was sufficient.

In the affidavit the federal agent asserted reason to believe that narcotics were being concealed in the Stallings apartment and sold unlawfully. The affidavit continues:

"And that the facts tending to establish the foregoing grounds for issuance of a Search Warrant are as follows: during the past two months, periodic surveillance has established the presence of known narcotic traffickers at the residence of John Doe a/k/a Eddie Stallings, 2850½ N. Central Avenue (upstairs) (north apartment), Indianapolis, Indiana, and that John Doe a/k/a Eddie Stallings has been selling heroin hydrochloride and cocaine during this time to an informant of the Indianapolis Police Department and the Federal Bureau of Narcotics. Further that said John Doe a/k/a Eddie Stallings told the informant he was preparing to travel to Chicago, Illinois, on or about February 23, 1967, to replenish his supply of heroin and cocaine. That the informant advised Det. Lt. Jones and Agent Rankin at approximately 12 o'clock noon on February 23, 1967, John Doe a/k/a Eddie Stallings had departed Indianapolis, Indiana during the early morning hours of February 23, 1967, enroute to Chicago, Illinois to obtain narcotic drugs because he was out of cocaine and that John Doe a/k/a Eddie Stallings drove to Chicago, Illinois in a white 1966 Cadillac automobile, bearing 1967 Indiana license of 49Z3331, said ownership of which is registered to Sarah Stallings, 2850½ N. Central, Indianapolis, Indiana."

Aguilar v. Texas [1] requires that where an affidavit is based on hearsay information "the magistrate must be informed of \* \* \* some of the underlying circumstances from which the officer concluded that the informant \* \* \* was 'credible' or his information 'reliable'."

The affidavit above quoted seems to be deficient in this respect.

---

1.  (1964), 378 U.S. 108, 114, 84 S.Ct. 1509, 1514, 12 L.Ed.2d 723.