**UNITED STATES of America**
v.
James CASTLE.
Cr. No. 518–62.

United States District Court
District of Columbia.
Dec. 20, 1962.

Arthur J. McLaughlin, Asst. U. S. Atty., Washington, D. C., for plaintiff.

Worth Rowley, Washington, D. C., for defendant.

YOUNGDAHL, District Judge.

The defendant has moved to suppress certain evidence seized from him on May 8, 1962, when a search warrant issued the same day by the United States Commissioner, Commissioner's Docket 5, Case 165, was executed by a search of premises occupied by the defendant. Each of the grounds urged in support of this motion will be considered separately.

1. The defendant contends that the search warrant is invalid on its face, because it authorized a nighttime search based upon an affidavit which asserted that the affiants had "reason to believe," instead of "positive" knowledge, that the property sought was on the premises.

■ The search warrant is not invalid on the above ground. 18 U.S.C. § 1405 authorizes the service of search warrants in cases involving violation of federal narcotics laws "at any time of the day or night if the judge or the

United States Commissioner issuing the warrant is satisfied that there is probable cause to believe that the grounds for the application exist." This search warrant specifically authorized the search "at any time in the day or night," on the basis of an affidavit by two detectives that they had "reason to believe" that narcotics paraphernalia were then being concealed on the premises specified. Such a warrant *would* have been invalid if Rule 41(c), Fed.R.Crim.P., were the governing law.[1] But 18 U.S.C. § 1405 was designed to change the requirements of Rule 41(c) as far as federal narcotics violations are concerned.

United States v. Merritt, 293 F.2d 742 (3rd Cir.1961), cited by the defendant in support of an argument that 18 U.S.C. § 1405 should be construed as requiring a showing of need to serve the warrant in the nighttime, does not support that argument and is completely irrelevant here. In that case, the search warrant specifically authorized only a daytime search, and the court held that 18 U.S.C. § 1405 did not authorize a nighttime search unless the warrant itself so stated. In other words, 18 U.S.C. § 1405 enlarges the power to *issue* a search warrant for nighttime service, but it does not permit nighttime service if the warrant was issued only for daytime service. 293 F.2d 744, n. 8. Here, by contrast, the warrant itself specifically authorized a nighttime search.

■ Nor would the Court be justified in construing 18 U.S.C. § 1405 to require a showing, to the person issuing the warrant, of special facts requiring a nighttime search. The conclusory statements about the need for speed and surprise that such a statutory construction would cause to appear on affidavits for search warrants would be pointless. In any event, Congress in passing 18 U.S.C. § 1405 made a legislative judgment that such special facts existed in searches concerned with federal nar-

1. "The warrant shall direct that it be served in the daytime, but if the affidavits are *positive* that the property is on the person or in the place to be searched.

the warrant may direct that it be served at any time." Rule 41(c), Fed.R.Crim. P. (Emphasis added.)

cotics violations, and this Court is in no position to find that there was no reasonable basis for such legislative judgment. Since Congress has provided that the warrant can be issued only if the judge or United States Commissioner is satisfied that there is "probable cause" to believe the grounds set forth in the application, 18 U.S.C. § 1405 does not violate the Fourth Amendment to the Constitution,[2] and the search warrant here at issue is not invalid.

2. The defendant contends that the search warrant is invalid on its face, because the affidavit for the warrant did not state that the premises were those of the defendant.

The affidavit for the search warrant clearly states that the affiants believe that the narcotics paraphernalia were then concealed "on the premises known as 1219 8th St. N. W. (entire premises, expressly that part occupied by James Castle)." This statement is in no way inconsistent with the statement in the special affidavit attached to the printed affidavit: that 1219 8th Street, N. W., was then "being used as a dope pad and that James Castle is the occupant and/or operator." The affidavits and the warrant itself thus clearly labelled the premises as those of the defendant. Any doubt on this score was removed at the hearing, when the defendant's mother-in-law testified in the defendant's behalf that the defendant "lived there" and paid the rent. (Tr. I, 50.)

3. The defendant contends that there was no probable cause to issue the search warrant, because the affidavit in support of the application for the warrant set forth hearsay knowledge which was not sufficiently corroborated.

The hearsay set forth in the affidavit for the search warrant was sufficiently corroborated to support a finding that the warrant was issued upon "probable cause." The hearsay consisted of a statement that the two detectives who swore to the affidavit had been told by one Andrew Dawkins on May 4, that he had purchased narcotics from the defendant on May 3. The detectives also swore to a statement that Dawkins told them that he had purchased heroin from the defendant on previous occasions. This hearsay was corroborated by other sources of information, including police discovery of capsules upon Dawkins, and a "preliminary field test" which indicated that those capsules contained "an alkaloid of the opiate group." Furthermore, the detectives swore that the defendant was then "well known to members of the Narcotic Squad as a narcotic drug addict and a dealer in narcotics," and that he had been convicted of violating the Uniform Narcotic Drug Act in 1960. The standard set forth in Jones v. United States, 362 U.S. 257, 269–272, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960) was therefore amply satisfied. "[A] substantial basis for crediting the hearsay" was presented. 362 U.S. at 269, 80 S.Ct. at 735.

The defendant claims that Dawkins was undergoing withdrawal symptoms at the time the above statements were taken, and that such physical condition made such statements unreliable. The defendant himself testified that Dawkins was shaking and felt sick at a time soon after Dawkins' release by the police. (Tr. II, 81–2.) But a police officer familiar with withdrawal symptoms testified that during the questioning of Dawkins, he appeared normal. (Tr. I, 18–20.) Dawkins himself refused to testify. (Tr. I, 5.) The Court adopts the officer's report of Dawkins' condition. In any event, a psychiatrist testified that in his opinion, a person undergoing withdrawal could provide, in some circumstances, reliable information as to where he had purchased his drugs.[3] A police officer

---

2. "[N]o warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." Amend. IV, U.S. Const.

3. "THE COURT: ' * * * What is your opinion, as an expert, as to whether a person, assuming *arguendo*, going through severe withdrawal symptoms, in some instances, not in every case but in some instances, realizing that you have to know

testified to the same effect.[4] This Court therefore finds as a fact that Dawkins was normal enough to provide reliable information about where he had purchased narcotics, and the warrant was thus properly issued upon "probable cause."

4. The defendant contends that there was no probable cause to issue the search warrant, because the facts secured from Dawkins and set forth in the affidavit were secured while Dawkins was being held in custody of the police in violation of Rule 5(a), Fed.R.Crim.P.

The defendant's assertion that Dawkins was being illegally held is irrelevant in these proceedings. Just as "one who claims prejudice only through the use of evidence gathered as a consequence of a search or seizure directed at someone else" cannot qualify as a "person aggrieved by an unlawful search and seizure" under Rule 41(e), Fed.R.Crim. P., Jones v. United States, supra at 261, 80 S.Ct. at 731, so the defendant cannot claim prejudice through evidence gathered during a period when someone else, not a party to these proceedings, was subjected to a violation of Rule 5(a). Thus this Court sustained the Government's objection to testimony concerning Dawkins detention. (Tr. I, 27.) And thus this ground advanced by the defendant must be rejected.

5. The defendant contends that the warrant was illegally executed, because the police failed to state their purpose and authority and failed to be refused entry before breaking into the premises.

The police stated their purpose and authority, and waited a sufficient time before entering the defendant's premises; the search warrant was thus executed in full compliance with 18 U.S.C. § 3109.[5] Six detectives of the Metropolitan Police Department went to the defendant's premises on May 8, 1962, arriving at approximately 9:00 p. m. The search warrant was in the pocket of one of the two detectives who went to the rear door of the premises, the rest remaining outside the front door. The officer with the search warrant then knocked, called out his name and title, announced that he had a search warrant for the premises and an arrest warrant for the defendant for violation of the Harrison Narcotic Act, waited "a few minutes" while he observed through a small window people inside begin to run, and then forced open the door. Both

the nature of the person and all that, but may there be some instances when a person, even though having severe withdrawal symptoms, may be able to tell from whom he purchased the drugs?'

"THE WITNESS: 'I would say he would know from whom he purchased it.'" (Tr. I, 34.)

The doctor's later statement that he "wouldn't think" that a person severely addicted to the use of heroin would be in condition to give testimony or give an affidavit is beside the point, because Dawkins did not give either "testimony" or an "affidavit." And the doctor's statement that he did not think such a person's statements would be reliable because "this man would have one thought in mind, how to get a fix," only suggests that statements made under such conditions may be *more*, not *less* reliable, when they concern revealing where narcotics may be purchased illegally. (Tr. I, 40.)

4. "THE COURT: " 'Have you seen a drug addict who has had withdrawal symptoms

who was still able to give you coherent information?'

"THE WITNESS: 'Yes, sir.'

"THE COURT: 'It is still possible to get coherent information, I take it, even though there are severe withdrawal symptoms?'

"THE WITNESS: 'Oh, yes, sir.'

"THE COURT: 'It is simply that the person has pain and is going through the symptoms but that does not mean he cannot give adequate information, as I understand it.'

"THE WITNESS: 'No, sir.'" (Tr. I, 28.)

5. "The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant." 18 U.S.C. § 3109.

officers so testified. (Tr. II, 102–6; II, 110–13.) These officers, at the back door, were the first to enter the premises. (Tr. II, 105; II, 112–13.) Whatever may have happened at the front door is, therefore, irrevelant. The Court adopts the officers' version of the facts, and finds, therefore, that the requirements of 18 U.S.C. § 3109 were fully met.

6. The defendant contends that the warrant was illegally executed, because the police seized property not included in the warrant's list of property, and because the police searched premises not specified on the warrant. The Court finds, however, that the warrant was legally executed.

The police seized a television set and noted such fact on the return of the warrant. The property specified in the warrant did not include a television set. The property to be seized was described as follows: "heroin, syringes, tourniquets, cookers and paraphernalia used in the preparation and dispensation of heroin and any other narcotic drugs. Any other narcotic drugs illegally held." It appears to the Court that it was proper for the police to seize the television set in order to make a thorough search for hidden narcotics. It is precisely such search that the warrant authorized, because it failed to state where in the premises any of the specified items might be found. In any event, the Court knows of no case which has held that the seizure of *some* items in excess of those specified must result in the suppression of *all* items seized, whether permitted or not. Indeed, the language of Rule 41(e) is directly to the contrary. It provides that if *"the property* seized is not that described in the warrant," then *"the property* shall be restored unless otherwise subject to lawful detention and *it* shall not be admissible in evidence at any hearing or trial." Rule 41(e), Fed. R.Crim.P. (Emphasis added.) Such language requires an item-by-item consideration, and an illegal seizure of one item does not reflect upon the legal seizure of another. The defendant has not moved for the return of the television set, which he could do under Rule 41(e).

The warrant specifically authorized a search of "Premises: 1219 8th St. N. W. Washington D. C.," which it parenthetically described as "entire premises, occupied by James Castle." The defendant occupied a downstairs apartment, but at least one officer apparently ran through a second floor apartment on the way to the third floor. (Tr. V, 16–21.) He was apparently looking for someone who had run away from the first floor. (Tr. II, 90–1.) The Court would find that the warrant's language authorized a search of the entire house; but even this finding is unnecessary, since the record on this hearing has disclosed no property seized outside of the defendant's apartment. The issue is therefore moot.

For the reasons set forth above, the defendant's motion to suppress will be denied.