**UNITED STATES of America, Appellant,**

v.

**Lonnie GOODING, Appellee.**

**UNITED STATES of America, Appellant,**

v.

**Leon F. BARNETT, Appellee.**

**Nos. 71–1669, 71–1945.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Oct. 25, 1972.

Decided March 26, 1973.

Rehearing Denied May 11, 1973.

---

Guy H. Cunningham, III, Asst. U. S. Atty., with whom Thomas A. Flannery, U. S. Atty., at the time the brief was filed, John A. Terry and Gregory C. Brady, Asst. U. S. Attys., were on the brief, for appellant. Harold H. Titus, Jr., U. S. Atty., also entered an appearance for appellant. Kenneth Michael Robinson, Washington, D. C., entered an appearance for appellant in No. 71–1945.

Herbert A. Rosenthal, Jr., Washington D. C. (appointed by this Court), for appellee in No. 71–1669.

James A. Treanor, III, Washington, D. C., with whom Suzanne Meyer, Washington, D. C. (both appointed by this Court), was on the brief for appellee in No. 71–1945.

Before FAHY, Senior Circuit Judge, and ROBINSON and WILKEY, Circuit Judges.

WILKEY, Circuit Judge:

These cases arise on appeal by the United States from orders of the District Court suppressing certain evidence for use at trial on indictments for violations of the federal narcotics laws.[1]

---

1. Both Gooding and Barnett were charged with violating former 26 U.S.C. § 4704(a) (1964), Act of 16 August 1954, ch. 736, § 4704(a), 68 Stat. 550, repealed by

The orders of the District Court rested on the view that the evidence was seized at night pursuant to warrants which failed to meet the statutory prerequisites for nighttime execution.[2]

## I. *The Applicable Statute*

Just which statute's requirements were applicable has been a matter of some debate. We can sympathize with U. S. District Judge Gesell's feeling that "[t]he search warrant statutes of possible application to narcotics searches in this jurisdiction are a bramblebush of uncertainties and contradictions."[3] Unfortunately, in its search for clarity, the District Court wandered into the briar patch and came to a result, in both cases, with which we cannot agree.

There are four potentially applicable standards which relate to the showing necessary before nighttime searches may be authorized. Two of these provisions deal with nighttime search as a general matter. The District of Columbia Court Reform and Criminal Procedure Act of 1970, 23 D.C.Code §§ 521–523 (Supp. V, 1972)[4] provides that a warrant may direct execution of the search at any time of the day or night on certain specified showings of need, which were admittedly not made in this case.[5] Rule 41(c) of the Federal Rules of Criminal Procedure allowed authorization of service anytime "if the affidavits are positive that the property . . . is in the place to be searched." Since the magistrates found only probable cause, the requisite "positivity" was admittedly lacking in the cases at bar.

Two other provisions deal with nighttime search in the more limited area of offenses "involving controlled substances." Title 33 of the D.C.Code § 414(h) (1967) as amended (Supp. V, 1972) provides that, when such offenses are involved, "the judge or commissioner shall insert a direction that it may be served at any time of the day or night." However, § 414(c) arguably imposes an additional requirement that the complainant and any witnesses must be ex-

---

Pub.L.No.91–513, Title III, § 1101(b)(3)(A), 84 Stat. 1292 (1970). Gooding was also charged with violating former 21 U.S.C. § 174 (1964), Act of 18 July 1956, ch. 629, Title I, § 105, 70 Stat. 570, repealed by Pub.L.No.91–513, Title III, § 1101(a)(2), 84 Stat. 1291 (1970).

2. Both warrants recited facts which were characterized as "in violation of Title 26 Section 4704(a) of the U.S.Code." Both warrants further stated:

[A]s I [the issuing magistrate] am satisfied that there is probable cause to believe that the property so described is being concealed on the (premises) above described and that the foregoing grounds for application for issuance of the search warrant exist.

*You are hereby commanded* to search forthwith the (place) named for the property specified, serving this warrant and making the search (at any time in the day or night[1]) . . .

1. The Federal Rules of Criminal Procedure provide: "The warrant shall direct that it be served in the daytime, but if the affidavits are positive that the property is on the person or in the place to be searched, the warrant may direct that it be served at any time." (Rule 41(c)

The warrant in *Gooding* was executed at 9:30 p. m. on 12 February 1971, the day after its issuance. The warrant in *Barnett* was executed at 8:08 p. m. on 11 February 1971, the day it was issued.

3. United States v. Gooding, 328 F.Supp. 1005, 1008 (D.D.C.1971).

4. These sections became effective as of 1 February 1971, prior to the issuance of these warrants.

5. Section 521(f)(5) provides that the warrant shall contain a direction that it
be executed during the hours of daylight or, where the judicial officer has found cause therefor, including one of the grounds set forth in section 23–522 (c)(1), an authorization for execution at any time of day or night.

. . . . .

The grounds set forth in Section 23–522 (c)(1) for execution of the warrant at any time are
. . . that there is probable cause to believe that (A) it cannot be executed during the hours of daylight, (B) the property sought is likely to be removed or destroyed if not seized forthwith, or (C) the property sought is not likely to be found except at certain times or in certain circumstances . . . . .

amined on oath before the warrant is issued. There is no showing that this requirement was met in these cases, so we will proceed on the assumption that § 414 would not validate the search warrants challenged here.[6]

Finally, the federal narcotics search warrant provision, 21 U.S.C. § 879(a), provides that

A search warrant relating to offenses involving controlled substances may be served at any time of the day or night if the judge or United States magistrate . . . is satisfied that there is probable cause to believe that grounds exist for the warrant and for its service at such time.

Since none of the other statutory standards were met, these search warrants can only be held valid if § 879(a), the *specific federal* statute, is the applicable provision.[7]

Judge Gesell in *Gooding* held that the general nighttime search provisions in the D.C.Code govern and require a special showing of need to search at night even in narcotics cases. In *Barnett* Judge Corcoran agreed. The District Court's holding in *Gooding* was appar-

ently based on the ground that a statute which is more specific and more recent should govern when conflict appears between such a statute and an older or more general law.[8] While we agree with that general principle, we disagree with its application in this case.

Although, as the District Court noted, 23 D.C.Code Sections 521–523 are more specific in the sense that they apply only to the limited geographical area of the District of Columbia, 21 U.S.C. § 879(a) is clearly the more specific or "special" provision as to *subject matter—search in narcotics cases.* Although § 879(a) went into effect before §§ 521–523, § *879(a)* was *considered* and *passed after* §§ 521–523.[9] Thus, the federal narcotics search statute—§ 879(a)—is in fact *both* the *more specific* and the *more recent* provision.[10]

■ Viewed in that light, the apparent inconsistency between the general local nighttime search statute and the special federal nighttime narcotics search statute disappears.[11] Sections 521–523 of Title 23 of the D.C.Code were enacted because (1) there was no general D.C. provision relating to the time for execu-

---

6. There is also an argument that 33 D.C. Code § 414(h) was impliedly repealed since 23 D.C.Code §§ 521–523 were intended to be comprehensive and were enacted under the (albeit incorrect) assumption that "[t]he District of Columbia Code presently contains no provision at all governing the time for execution of a search warrant. H.R.Rep.No.91–907, 91st Cong., 2d Sess. at 109 (1970)." Since our conclusions concerning these warrants do not rest on the application of 33 D.C.Code § 414(h), we need not reach this issue. However, we should note that the District Court firmly rejected this argument of implied repeal in United States v. Green, 331 F.Supp. 44 (D.D.C.1971).

7. See Part II of this opinion for a discussion of the application of § 879(a) to these warrants.

8. 328 F.Supp. 1005, 1008.

9. The District of Columbia Court Reform and Criminal Procedure Act of 1970, which included 23 D.C.Code §§ 521–523,

was enacted on 29 July 1970 but did not become effective until 1 February 1971. The Controlled Substances Act, including 21 U.S.C. § 879, was enacted on 27 October 1970 and became effective, at least as to the provisions of § 879(a), immediately.

10. The District of Columbia Court of Appeals came to the same conclusion in United States v. Thomas, 294 A.2d 164, 166–167 (D.C.C.A.), cert. denied, 409 U. S. 992, 93 S.Ct. 341, 34 L.Ed.2d 258 (1972):

We think it more in harmony with the obvious intent of Congress to give special treatment to narcotics law enforcement to view such provisions [as § 879 (a)] as the "special" ones . . . not subject to qualification by the general search warrant provisions of the U.S. and D.C.Codes . . . . The "special" area of legislation is narcotics law enforcement, not District of Columbia law enforcement.

11. And the "bramblebush" of statutes appears less forbidding.

tion of search warrants[12] and (2) Congress desired to insert criteria of "need" which were felt superior to the "positivity" test found in the Federal Rules. There is no reason to believe that narcotics searches were to be affected because, in contrast, (1) there was already a specific federal provision relating to narcotics searches (18 U.S.C. § 1405(1)), and (2) the "positivity" requirement needed no revision in regard to narcotics searches because it had not been applied in that context.[13] When Congress *later* turned to the *specific* problem of standards governing the issuance of warrants by U.S. magistrates in narcotics cases, § 879(a) was its response to this narrower problem and that section must govern in these cases.[14]

## II. *Application of the Statute*

Since we conclude that § 879(a) provides the relevant tests by which to judge the validity of these search warrants, the obvious next inquiry is whether those tests were met. Appellees contend that § 879(a) requires a special showing of a need to search at night.

They argue that the magistrate must be satisfied that there is probable cause to believe that grounds exist *both* "for the warrant" *and* "for its service at such time" (at any time of the day or night). The Government contends that no special showing of need is required and admit that, if it is, no such showing was made and the warrants were invalid.[15]

If appellees' interpretation of the words of the statute were the only possible reading, we would have to agree with their position. However, the requirement of probable cause to search at night does not necessarily call for a special showing of *need* for nighttime *as opposed* to daytime search. Rather, at least as natural an interpretation would imply that this added clause, "for its service at such time," requires only *grounds* for service at night in the sense that the narcotics sought will probably be present on the named property at night.[16]

Confronted with this ambiguity, we can gain guidance from the legislative history. Section 879(a) is a direct descendant of 18 U.S.C. § 1405(1).[17] Indeed, the House Report notes that

12. The possibility that Congress thought there was no D.C. provision *at all* dealing with nighttime search warrants is discussed at note 6. That fact might relate to doubts about the continuing validity of 33 D.C.Code § 414(h), although that issue does not need to be decided in this case. However, even congressional intent to enact a comprehensive nighttime search statute when it passed 23 D.C.Code §§ 521–523 would *not* serve to *negate* its *subsequent* decision to reaffirm a specific and different rule for U. S. magistrates regarding narcotics nighttime searches in regard to federal violations—by passing 21 U.S.C. § 879(a).

13. See United States v. Stallings, 413 F.2d 200 (7th Cir. 1969), cert. denied, 396 U.S. 972, 90 S.Ct. 460, 24 L.Ed.2d 440 (1969). See footnote 22, *infra.*

14. We have noted that, if the special local statute (33 D.C.Code § 414) is still valid, these warrants may not have met its requirement of examination under oath. However, § 414 of Title 33 is concerned only with "violations of the provisions of this chapter" (*i. e.*, Chapter 4, entitled

"Narcotic Drugs"—the local narcotic laws). Thus the requirements of § 414 (c), which were not demonstrated to have been met by the warrants in these cases, simply do not apply here because these warrants were issued for violations of federal law.

15. Appellant's Reply Brief at p. 2, n. 5.

16. Section 879(a) was given this reading by the District of Columbia Court of Appeals in United States v. Thomas, 294 A.2d 164 (D.C.C.A.), cert. denied, 409 U.S. 992, 93 S.Ct. 341, 34 L.Ed.2d 258 (1972).

17. Act of 18 July 1956, ch. 629, Title II, § 201, 70 Stat. 573, repealed by Pub.L.No. 91–513, Title III, § 1101(b)(1)(A), 84 Stat. 1292 (1970). This section provided, in pertinent part, that a "search warrant [relating to narcotics offenses] may be served at any time of the day or night if the judge of United States Commissioner issuing the warrant is satisfied that there is probable cause to believe that the grounds for the application exist."

Subsection (a) of this section [21 U.S.C. § 879] *incorporates* 18 U.S.C. § 1405 and authorizes service of a search warrant at any time of the day or night if probable cause has been established to the satisfaction of the judge or U.S. Magistrate issuing the warrant.[18]

Section 1405(1) was uniformly interpreted to require only a showing of probable cause to search in order for a warrant relating to narcotics to be executed at night.[19]

Despite the clear legislative history reflecting congressional intent not to change the prior law in this area,[20] appellees argue that the change in wording must be viewed as significant. We cannot agree. If the necessary "grounds . . . for service at such time" involve more than a showing that the narcotics will be present on the premises at any time of the day or night, then presumably the additional showing required would concern a need to search at night. Appellees argue as much by suggesting that § 879(a) incorporates the standards set forth in the general D.C. nighttime search provision. However, the exact wording of § 879(a) was proposed by the Justice Department. It is inconceivable that, confronted with a crescendoing nationwide drug abuse problem, the Department would recommend to Congress a statute making the obtaining of nighttime search warrants just as difficult for narcotics offenses as in any other case.[21]

If we accepted appellees' argument that the federal statute's requirements for nighttime search in narcotics cases are precisely coterminous with those of the local statute which applies in all types of cases, then whatever distinction Congress sought to establish by enacting a *separate and special* statute regarding federal narcotics offenses would be completely *obliterated.* And since we are construing a federal statute, that construction would be of uniform national application. On the other hand, if appellees concede that § 879(a) does set up its own federal standard, and if the showing required is *less* than that set out in 23 D.C.Code §§ 521–523, but *more* than mere probable cause to believe that the drugs will be found "at such time," then *no source for the applicable standard appears.*

Appellees are essentially arguing that great significance should be given to one possible reading of new language when an ambiguity is present, even when the legislative history suggests no intent to change the meaning of the section. Our refusal to follow that reasoning is fortified by the fact that the very same ambiguity was potentially present in the previous statute. Section 1405 provided that a search warrant could be served at any time if "there is probable cause to believe that grounds for the application exist." It is *possible* to read this statute to require a showing of need to search at night, since the "application" could be interpreted as seeking both (1) issuance of the warrant and (2) permis-

18. H.R.Rep.No.91–1444 (Part I), 91st Cong., 2d Sess. 54 (1970) (emphasis added). See U.S.Code Cong.Adm.News, 91st Cong., 2d Sess., at pp. 4621–22 (1970). Exactly the same language is contained in the Senate Report. S.Rep.No.91–613, 91st Cong., 1st Sess. 30–31 (1969).

19. United States v. Stallings, 413 F.2d 200, 207 (7th Cir. 1969), cert. denied, 396 U.S. 972, 90 S.Ct. 460, 24 L.Ed.2d 440 (1969); United States v. Castle, 213 F.Supp. 52 (D.D.C.1962); United States v. Tucker, 262 F.Supp. 305 (S.D.N.Y.1966).

20. In *Gooding*, Judge Gesell conceded that "the legislative history [of 21 U.S.C. § 879(a)] indicates that no change from the prior law was intended." 328 F.Supp. 1005, 1007.

21. 21 U.S.C. § 879(a) is part of the Controlled Substances Act, "legislation designed to deal in a comprehensive fashion with the growing menace of drug abuse in the United States . . . through providing more effective means for law enforcement aspects of drug abuse prevention and control . . . ." H.R.Rep. No. 91–1444 (Part I), 91st Cong., 2d Sess. 1 (1970) U.S.Code Cong. & Admin. News, p. 4567.

sion to search any time of the day or night, just as "probable cause to believe that grounds exist" (§ 879(a)) has been argued by appellees to require showings of "probable cause" and "grounds" both "for the warrant" *and* "for its service at such time."

The courts, of course, refused to read § 1405 that way. They required only a showing of probable cause to believe that narcotics would be found.[22] Judges and legislators thoroughly conversant with the special, almost unique, problems of narcotics law enforcement have long recognized that effective searches for narcotics reasonably require different methods and timing. This is basically the reason that both the U.S.Code and the D.C.Code contain two distinct provisions, one for general searches, the other for narcotics searches. Deferring to "a legislative judgment that . . . special facts existed in searches concerned with federal narcotics violations," one court noted that the "conclusory statements about the need for speed and surprise that [a statutory construction parallel to the one sought by appellees here] . . . would cause to appear on affidavits for search warrants would be pointless."[23]

There is absolutely no showing that this "legislative judgment" changed in any respect during the enactment of § 879(a) to replace § 1405.[24] All the legislative history is to the contrary. Surely such a significant departure from prior policy would have drawn comment in the Senate and House Re-

ports—especially in the context of a statutory scheme which had the overall purpose of much more stringent and effective suppression of narcotics trafficking. Since the new language cited by appellees does not even present a novel ambiguity, we must conclude that the previous meaning of the section "incorporated" in § 879(a) remained intact.

It has been argued that a greater showing of grounds to search at night was intended because § 879 applies in a comprehensive fashion to all offenses involving "controlled substances." In contrast, § 1405 applied to only certain specified narcotics offenses. Appellees suggest (without, however, pointing to any concrete evidence of such congressional intent) that a tougher standard for nighttime search was established as the *quid pro quo* in a legislative compromise extending the availability of nighttime search authorizations to a larger number of offenses. This argument proves too much. Although the "probable cause" required to be shown by § 879 *could* conceivably be characterized as ambiguous and potentially read to include probable cause to believe that special need exists to search at night, the one thing that is *clearest* about § 879 is that it is meant to apply the *same* standard for nighttime search authorizations with respect to *every* type of controlled substance.

It is true that reading § 879 to incorporate the showing previously required by § 1405 does make obtaining nightime search warrants easier with regard to

---

22. Section 1405(1) was intended to provide an exception to the inflexible and archaic requirement of "positivity" in Rule 41(c). See S.Rep.No.1997, 84th Cong., 2d Sess., 8–9 (1956). Rule 41(c)'s test required the affidavits to be "positive" about the fact that "the property is on the person or in the place to be searched." The new provision, § 1405(1), merely changed the degree of certainty required *as to that fact*. Ignoring a potential ambiguity, the courts wisely consulted congressional intent and found, as we do here, no desire to establish an additional required showing of need when narcotics search was involved.

23. United States v. Castle, 213 F.Supp. 52, 53–54 (D.D.C.1962).

24. The District Court in *Gooding* stated that "[t]here is no suggestion that . . the need for nighttime warrants [is] any greater where narcotics offenses are involved rather than other crimes." 328 F.Supp. 1005, 1008. That comment simply ignores the whole background and purpose of both 18 U.S.C. 1405(1) and 21 U.S.C. 879(a). See United States v. Castle, *supra*.

some categories of drugs. However, the *alternative reading,* espoused by appellees, *suggests* that the statute was *intended to make nighttime searches more difficult in hard narcotics cases.* As noted earlier, the Justice Department proposed the exact language of § 879. This argument from expanded coverage necessarily suggests that the *Department desired a retreat* from the test of mere probable cause to search in hard narcotics cases, and that the Department accomplished this with *no comment in the legislative history,* in the context of a *measure aimed at increasing the effectiveness of law enforcement with regard to drugs.* The Justice Department's proposals have sometimes been the subject of inaccurate interpretation and speculation, but the suggestion that the Justice Department meant to make nighttime searches for heroin *more* difficult is indeed novel and patently off the mark.

Another attempt to suggest that the general legislative intent was compatible with a greater required showing of grounds to search at any time implies that such a showing would be quite easy in heroin cases and would thus not impede law enforcement. That argument proves too little. Since the showing required by the reading of § 879 which appellees seek is a showing of grounds to search "at such time," it must be noted that the requirement is of grounds to search "at *any* time of the day or night." That is quite different from a requirement that there be grounds to search "at night."

The statute's actual phrasing implies that the real interest required to be demonstrated is the interest in speed and surprise—grounds for search as soon as tactical considerations warrant despite the fact that the earliest possible moment may be after dark. If this showing would be easy in heroin cases, we can see no reason why it would not be just as routine in any other case involving controlled substances. Speed and surprise are equally necessary to seize any type of drug which it is generally illegal to possess. Since all controlled substances can be the subject of abuse and may have to be ferreted out in "underground" markets, there is nothing about the nature of the drug sought which renders the need for speed and surprise any less likely or any less easily shown. Therefore the expanded applicability of § 879 to a larger variety of controlled substances does not necessarily imply a departure from the standards of the previous "incorporated" section.

At worst, requiring a special showing of *need* to search "at any time of the day or night" would make nighttime search for narcotics more difficult. At best, and more probably, acceptance of appellees' arguments here would generate pointless and conclusory statements in future applications for warrants. Neither result would comport with the sound and clear legislative intent which was expressed when § 879(a) was enacted.

We hold that the applicable statute, 21 U.S.C. § 879(a), requires only a showing of probable cause to believe that the narcotics will be found on the premises at any time of the day or night. Since both search warrants clearly met this standard,[25] the District Court's grant of the motions to suppress in these cases must be reversed and the cases are remanded for further proceedings consistent with this opinion.

So ordered.

---

25. Both search warrants found probable cause to believe that the narcotics were being "concealed" on the relevant premises. Both incorporated affidavits which alleged that the drugs were being "secreted." In the absence of any indication that such concealment was other than continuous, the natural inference would be that they could be found on the premises at any time of the day or night. In this context, any requirement of a more specific finding by the magistrate would be an absurd linguistic artificiality which the statute does not require.

FAHY, Senior Circuit Judge, concurring:

I concur in the result reached by Judge Wilkey. I also concur generally in his opinion. In reaching the same conclusion, however, I have followed the course now stated, which is similar to but somewhat different from that adopted by Judge Wilkey.

Rule 41(c) of the F.R.Crim.P., when each of the search warrants in these cases was issued, provided as follows with respect to issuance and contents:

> The warrant shall direct ·that it be served in the daytime, but if the affidavits [establishing the grounds for issuing the warrant] are positive that the property is on the person or in the place to be searched, the warrant may direct that it may be served at any time . . . .

Subparagraph (g) of the Rule provided:

> This rule does not modify any act, inconsistent with it, regulating search, seizure and the issuance and execution of search warrants in circumstances for which special provision is made.
>
> · · ·

Special provision was made by former section 1405 of Title 18 of the United States Code [1] for any case involving specified violations of the federal narcotics laws.[2] United States v. Stallings, 413 F.2d 200 (7th Cir.), cert. denied, 396 U.S. 972, 90 S.Ct. 460, 24 L.Ed.2d 440 (1969); United States v. Tucker, 262 F.Supp. 305 (S.D.N.Y.1966). In such cases section 1405(1) provided:

> a search warrant may be served at any time of the day or night if the judge or the United States Commissioner issuing the warrant is satisfied that there is probable cause to believe that the grounds for the application exist. . . .

The Managers on the part of the House, in referring to section 1405, stated that the restrictions governing the issuance of night search warrants are thus liberalized with respect to specified laws relating to narcotic drugs and marijuana, "so that a search warrant may be issued in any such case at any time of the day or night if the judge or the United States Commissioner is satisfied that there is probable cause to believe that the grounds for the application exist." Conference Rep.No.2546, 84th Cong., 2d Sess., 16 (1956), U.S.Code Cong. & Admin.News, p. 3320. The "positiveness" requirement of Rule 41(c) was referred to as inflexible and archaic, giving the peddler a distinct advantage over law enforcement forces and hampering efforts to deal with narcotics racketeering. S.Rep.No.1997, 84th Cong., 2d Sess., 8–9 (1956). The Report continues: "the element of 'positiveness' [of Rule 41] is no longer required and 'probable cause' alone is enough to obtain a night search warrant in narcotics cases . . . ." Id. at 9.

The "positiveness" previously required of the affidavits by Rule 41(c) was that "the property is on the person or in the place to be searched," as to which, under section 1405(1), the issuing judge or commissioner need have only "probable cause" to believe.

21 U.S.C. § 879(a), has now superseded section 1405(1). It provides as follows:

> A search warrant relating to offenses involving controlled substances may be served at any time of the day or night if the judge or United States magistrate issuing the warrant is satisfied that there is probable cause to believe that grounds exist for the warrant and for its service at such time.

This enactment I construe to be a restatement or interpretation of section 1405(1). It clarifies the meaning of that section, which had relieved search warrants for narcotics of the positivity

---

1. Act of July 18, 1956, ch. 629, Title II, § 201, 70 Stat. 573, repealed by P.L. 91–513, Title III, § 1101(b)(1)(A), 84 Stat. 1292 (1970).

2. Such provisions included former sections 174 and 184(a) of Title 21 of the United States Code, and related violations of the Internal Revenue Code.

requirement of Rule 41(c), substituting a probable cause requirement for a search at any time, thus giving the "flexibility" sought by Congress in narcotics cases. It does not seem to me that this interpretation is precluded by the fact that the controlled substances covered by section 879(a) are enlarged beyond those previously within the scope of section 1405.

From the foregoing history I conclude that the requirement of section 879(a) that the issuing magistrate be "satisfied that there is probable cause to believe that grounds exist . . . for its service at such time" means, when considered with Rule 41(c) as it then read, that there is probable cause to believe that, in the case of narcotics, the "property is on the person or in the place to be searched," in which event the warrant could direct that it be served at any time. Thus, in the case of narcotics, previously under section 1405(1) and later under section 879(a), if the judge was satisfied "that there is probable cause to believe" rather than "if the affidavits are positive" that the "property is on the person or in the place to be searched," the warrant could permit execution at any time. It is in this manner I interpret the House Report, relied upon by the Government, which states:

> Subsection (a) of this section [21 U. S.C. § 879] incorporates 18 U.S.C. 1405 and authorizes service of a search warrant at any time of the day or night if probable cause has been established to the satisfaction of the judge or U.S. magistrate issuing the warrant.[3]

Our question then, under section 879(a), is the factual one whether in each case the magistrate issuing the

warrant, which authorized the search at any time of the day or night, was "satisfied that there is probable cause to believe that grounds exist for the warrant and for its service at such time," i. e., "that the property is on the person or in the place to be searched." In the *Gooding* case the magistrate, referring to the facts set forth in the affidavit accompanying and made a part of the warrant, states: "I am satisfied that there is probable cause to believe that the property so described is being concealed on the (premises) above described . . . ." The affidavit supports such a statement by the magistrate. The same is true of the situation in *Barnett*.

These search warrants accordingly have met the requirements of section 879(a).[4] The question then arises whether the searches were nevertheless invalid for failure to meet the standards for a nighttime search contained in either Title 23 or Title 33 of the District of Columbia Code.

I consider first Title 23 in its relation to Title 33. The search warrant provisions of 23 D.C.Code §§ 521–525 (Supp. V, 1972) do not refer specifically to controlled substances. They apply generally to search warrants in this jurisdiction. The warrants in the cases before us fail to meet these standards for a nighttime search, namely,

> . . . That there is probable cause to believe that (A) it cannot be executed during the hours of daylight, (B) the property sought is likely to be removed or destroyed if not seized forthwith, or (C) the property sought is not likely to be found except at certain times or in certain circumstances . . . .

3. H.R.Rep.No.91–1444, 91st Cong., 2d Sess., Pt. 1 at 54 (1970) (hereinafter, H.R.Rep.No.91–1444), U.S.Code Cong. & Admin.News, p. 4621, and like language in the Senate Report, S.Rep.No.91–613, 91st Cong., 1st Sess., 30–31 (1969).

4. Some question may be raised about the applicability of section 879(a) in the District of Columbia in that Congress

had failed specifically to include in the Act a special provision of applicability to the District of Columbia as it had done with respect to section 1405(2). I do not think the applicability of section 879(a) to this jurisdiction turns upon such a special provision, but upon the considerations advanced subsequently in this opinion.

23 D.C.Code § 522(c)(1) (Supp. V, 1972).

A strong argument is available that these provisions were intended by Congress to apply in this jurisdiction to controlled substances as well as generally, notwithstanding 33 D.C.Code § 414, as amended (Supp. V, 1972), applies specifically to search warrants for narcotics, and subsection (h) of section 414 provides that the warrant shall direct that it be served at any time in the day or night. In United States v. Thomas, 294 A.2d 164, cert. denied, 409 U.S. 992, 93 S.Ct. 341, 34 L.Ed.2d 258 (1972) the Court of Appeals of the District of Columbia spoke upon this matter as follows:

> We think it more in harmony with the obvious intent of Congress to give special treatment to narcotics law enforcement to view such provisions [relating to controlled substances] as the "special" ones (including D.C.Code 1967, § 33–414(h)) not subject to qualification by the general search warrant provisions of the U.S. and D. C.Codes (Rule 41(c), Federal Rules of Criminal Procedure, and § 23–522(c)(1)). The "special" area of legislation is narcotics law enforcement, not District of Columbia law enforcement . . . .

294 A.2d at 166–167.

We need not inquire whether or not we are bound by this ruling; for, that aside, I am unable to give precedence to sections 521 to 525 of Title 23 over section 414 of Title 33, insofar as the search warrants now considered are concerned. True it is that Title 33 appears to have been overlooked in the legislative history of Title 23, see the Appendix to this opinion, but I think the court cannot overlook the fact that Title 33 was nevertheless reenacted at the same session that enacted the up-to-date general search warrant provisions of Title 23. I accordingly conclude that as between the two standards for a nighttime search

for narcotics Title 33, section 414(h), prevails over Title 23, section 522(c)(1).

Finally, does Title 33, section 414(h), control over section 879(a)? If so, the warrants were inadequate, for section 414(c) of Title 33 was not complied with. But I am persuaded that in a search warrant for narcotics involved in an alleged violation of the federal narcotics laws, as here, section 879(a) controls, as held by the Court of Appeals of the District of Columbia in Thomas. I reach this conclusion, however, upon somewhat different reasoning. It is that Chapter 4 of Title 33 of our Code, of which section 414(h) is a part, entitled "Narcotic Drugs," is concerned only with violation of our local narcotics laws, that is, as section 414(a) states, "violation of the provisions of this chapter"—the District of Columbia Code chapter concerned with narcotics and defining related local crimes.

By reason of the foregoing, since the present warrants, explicitly issued in connection with the alleged violation of the federal narcotic laws, complied with section 879(a), I conclude they were valid and that the evidence seized thereunder should not have been suppressed. I reach this conclusion reluctantly. Congress recently, in providing in Title 23 of our local Code the standards generally applicable for a nighttime search in this jurisdiction, clearly differentiated between a nighttime and a daytime search. The legislative history of those provisions give strong evidence of an intention to include searches for controlled substances. Searches at night, especially of a home, present a potentially greater intrusion upon privacy. See Jones v. United States, 357 U.S. 493, 498, 78 S. Ct. 1253, 2 L.Ed.2d 1514 (1958). And no significant burden would be imposed on the magistrate or other officials by requiring special reasons for a search at night even for narcotics, particularly of a private home. These considerations have now found expression in Rule 41 itself as amended effective October 1,

1972, subsequently to the issuance of the *Gooding* and *Barnett* search warrants. The Rule now provides in its subparagraph (c) as follows:

> The warrant shall be served in the daytime, unless the issuing authority, by appropriate provision in the warrant, and for reasonable cause shown, authorizes its execution at times other than daytime . . . .

This provision would not have helped appellees had it been in effect when the present warrants were issued, for it is coupled with another provision, in subparagraph (h) of the new Rule, which defines the term "daytime" to mean "the hours from 6 a. m. to 10 p. m. according to local time." The *Gooding* and *Barnett* warrants were each served before 10 p. m. local time.

The salutary effect of the modification of subparagraph (c) of the Rule remains for consideration with respect to search warrants issued after its effective date. The result I reach in the present cases I think follows from the statutory situation existing when the *Gooding* and *Barnett* warrants were issued, a situation which in my opinion did not go beyond what is permissible under the Fourth Amendment.

I accordingly concur in reversal.

## APPENDIX

There is strong indication in the legislative history of 23 D.C.Code §§ 521–525 that Congress intended to apply these provisions to narcotics searches in this jurisdiction.

In revising the provisions governing Criminal Procedure for the District of Columbia Congress was advised that other than the "inadequate" positivity rule of 41(c), F.R.Crim.P., the then existing D.C.Code had no provision dealing with nighttime searches. Mr. Donald E. Santarelli, Associate Deputy Attorney General of the United States stated:

> Mr. Chairman, we have also proposed a change in the standard [41(c), F.R. Crim.P.] for nighttime search warrant. As you know, the District of Columbia Code presently contains no provision at all governing the time for execution of a search warrant . . . .
>
> \* \* \* \* \* \*
>
> We have found that the positivity rule, positivity test, is inadequate. In fact, it is relatively unfair because of the greater potential intrusion on the privacy of persons from a nighttime search. There should be some justification for that search; not merely that you are positive that the evidence is there.
>
> \* \* \* \* \* \*
>
> This is for the protection of civil liberties and greater improvement over the positivity.

Hearings on S.2869, S.2602, and S.2980, Before the Senate Comm. on the District of Columbia, 91st Cong., 1st Sess., Pt. 4 at 1389 (1969) (Hearings). See also, Statement of Mr. Thomas A. Flannery, U. S. Attorney for the District of Columbia, *id.* at 1416.

The new provisions governing nighttime search warrants, 23 D.C.Code §§ 521–525, thus seem to have been enacted under the mistaken assumption that, notwithstanding Title 33 of the Code,

> The District of Columbia Code presently contains no provision at all governing the time for execution of a search warrant.

H.R.Rep. No. 91–907, 91st Cong., 2d Sess. at 109 (1970) (H.R.Rep.). Moreover, the new provisions were intended to be comprehensive, S.Rep. No. 91–405, 91st Cong., 1st Sess. at 38–39 (1969), encompassing nighttime and no-knock searches. See H.R.Rep., *supra,* at 109, including a statement of Mr. Charles T. Duncan, Corporation Counsel for the District of Columbia, that narcotics were a type of contraband, 23 D.C.Code § 521(d)(2), which "may be removed or destroyed if not seized forthwith or . . . found only at nighttime." Hearings, *supra,* Statement of Mr. Santarelli, at 1404. See also the testimony of Mr. Santarelli, *id.,* at 1389–1390; the statement of Mr.

Flannery, *id.*, at 1417; and the statement of Mrs. Patricia Wald of the Neighborhood Legal Services, *id.*, at 1493.

It would seem from the above that Congress may have intended the new search warrant nighttime provisions to apply in the case of narcotics. This interpretation is further supported by the reason stated by the District Court in *Gooding*:

> Roughly sixty percent of the search warrants isued [sic] in the District of Columbia are related to violations of the narcotics laws. If Congress had intended to except federal narcotics search warrants from the requirements of 23 D.C.Code § 523(b), one would certainly expect the intention to be expressed in the statute or at least in the legislative history, possibly by reference to the special narcotic search statute then applicable in the District for local offenses. The Government has not directed the Court's attention to any such indication and the Court has found none. (Footnote omitted.)

328 F.Supp. at 1007–1008.

Yet we are faced with the reenactment of Title 33, with its section 414(h), authorizing search warrants for narcotics, executed at night, without compliance with such standards as Title 23 requires generally for searches at night.

SPOTTSWOOD W. ROBINSON, III, Circuit Judge, concurring in the result:

The thoughtful and excellently crafted opinions of my colleagues demonstrate convincingly that the orders appealed from cannot stand. I concur in reversal and in much of their supporting reasoning. I differ, however, with their conclusion that 21 U.S.C. § 879(a) authorizes nighttime execution of search warrants in federal narcotic cases merely on a showing of probable cause to believe that a controlled substance is then present on the person or premises to be searched. I believe, too, that the affidavits underpinning the warrants issued in the cases at bar should be credited with a larger and more crucial role in the resolution of these cases than they have yet been assigned. To accommodate these two considerations, I record this separate position.

I

At the outset, I acknowledge agreement with my colleagues that Section 879(a) set the standard for nighttime execution of the warrants before us. The careful analysis and thorough treatment which they have given this aspect of the litigation certainly needs no effort toward further elaboration. The task left for me is simply to summarize the major propositions which have persuaded me.

While the Controlled Substances Act,[1] of which Section 879(a) is a part, is not expressly made operative in the District of Columbia, it is clear that Congress intended the new law to have nationwide effect, and thus to encompass federal narcotic offenses which occur in the District.[2] I see no conflict between Section 879(a) and D.C.Code § 33–414, which also is limited to execution of search warrants in narcotics cases, since the local provisions extend only to searches based on suspected transgressions of the District's own drug laws.[3]

---

1. Pub.L. No. 91–513, tit. II, 84 Stat. 1236, 1242 (1970), 21 U.S.C. § 801 et seq. (1970).

2. The national scope of the Act is apparent from 21 U.S.C. § 801 (1970), in which congressional findings as to the interstate and intrastate aspects of traffic in narcotics are enunciated.

3. Section 33–414(a) provides:
   > A search warrant may be issued by any judge of the Superior Court of the District of Columbia or by a United States commissioner for the District of Columbia when any narcotics drugs are manufactured, possessed, controlled, sold, prescribed, administered, dispensed, or compounded *in violation of the pro-*

Moreover, statutes which are specific as to subject matter normally prevail over those which are less particularized in their area of concern.[4] Nothing sufficient to override that principle appearing here, it follows that the federal narcotic search warrant procedures of Section 879(a) must take precedence over the general search warrant provisions of D.C.Code §§ 23–521 to 23–523 and, as well, the general service criteria set forth in Federal Criminal Rule 41(c).[5]

Our unanimous conclusion with respect to the applicability of Section 879(a) to the present cases is further buttressed by the canon that the more recent statute dominates the less recent [6] for, as Judge Wilkey notes,[7] Section 879(a) was considered and passed after enactment of Section 23–521 and its companion provisions. Additional support for our construction is derived from the requirement of the Controlled Substances Act that where one of its specifications so conflicts with a state

law that the two cannot be read consistently, the federal regulation controls the field.[8] I believe that such a conflict exists between Section 879(a) and the District provisions,[9] and hence that effect must be given to the former as Congress has mandated.

II

In agreement with my colleagues up to this point, I now arrive at the place where our paths diverge. They hold that Section 879(a) works no change in its predecessor statute, 18 U.S.C. § 1405(1), which permitted search warrants in federal narcotic investigations to be served at any time of the day or night so long as the authorizing magistrate or judge was satisfied as to the existence of probable cause for the search. On the basis of the language of Section 879(a), which I consider to be very plain, I am unable to accept that interpretation.

---

visions of this chapter, and any such narcotic drugs and any other property designed for use in connection with such unlawful manufacturing, possession, controlling, selling, prescribing, administering, dispensing, or compounding, may be seized thereunder, and shall be subject to such disposition as the court may make thereof and such narcotic drugs may be taken on the warrant from any house or other place in which they are concealed.

(emphasis supplied).

4. D. Ginsberg & Sons v. Popkin, 285 U.S. 204, 208, 52 S.Ct. 322, 76 L.Ed. 704 (1932); Kepner v. United States, 195 U.S. 100, 125, 24 S.Ct. 797, 49 L.Ed. 114 (1904). Compare Fourco Glass Co. v. Transmirra Prods. Corp., 353 U.S. 222, 228–229, 77 S.Ct. 787, 1 L.Ed.2d 786 (1957).

5. Fed.R.Crim.P. 41(c). At the time the warrants in controversy were issued and executed, Rule 41(c) authorized a direction for nighttime service only where the affidavit supporting the warrant was positive that the property to be seized was on the person or in the place to be searched. The positivity requirement has since been deleted, and Rule 41(c) now permits such a direction for reasonable cause shown. See note 16, infra.

6. Schick v. United States, 195 U.S. 65, 68–69, 24 S.Ct. 826, 49 L.Ed. 99 (1904); United States v. Hosmer, 76 U.S. (9 Wall.) 432, 435, 19 L.Ed. 662 (1869).

7. Ante p. 431.

8. Section 903 of the Act provides:

No provision of this subchapter shall be construed as indicating any intent on the part of the Congress to occupy the field in which that provision operates, including criminal penalties, to the exclusion of any State law on the same subject matter which would otherwise be within the authority of the State, unless there is a positive conflict between that provision of this subchapter and that State law so that the two cannot consistently stand together.

21 U.S.C. § 703 (1970). The District of Columbia falls within the Act's definition of "State". 21 U.S.C. § 802(24) (1970).

9. As I later point out, text infra at notes 14–15, the local provisions for nighttime execution of search warrants are considerably more stringent than that of § 879(a), and thereby conflict with the disposition of Congress to make federal narcotics searches at night less rather than more difficult than other types of searches.

I perceive no ambiguity in the wording of Section 879 (a) which would require a probe into its legislative history. As a comparison of that section with former Section 1405(1) readily reveals, the two provisions are not nearly identical.[10] Congress did not reenact the earlier in the later without significant alteration; it changed the language of Section 1405(1) importantly by addition of the final clause—"and for its service at such time." Reading that clause with the preceding part of the section and applying normal rules of English grammar, I can construe the whole to mean but one thing: for service of a search warrant at night, probable cause must be shown for the search itself *and* probable cause must be shown for service of the warrant "at such time." Indeed, as Judge Kelly stated in dissent in United States v. Thomas,[11] to hold otherwise would be to render the added words meaningless.

In the face of an unambiguous statute, resort to legislative history serves no useful purpose.[12] Here, although both of my colleagues resort to legislative comment on Section 879(a) to support their interpretation of that section, it seems to me that the comment introduces uncertainty not present in the section when examined alone. The House Report states that Section 879(a) "incorporates" former Section 1405 and authorizes anytime-service on "probable cause." [13] But the report intimates nothing as to whether the probable cause which it says must be established to the satisfaction of the magistrate or judge for service at "any time" is simply probable cause to search or, rather, probable cause to search at a particular time. This amphibology in the legislative history offers no clarification of what is already obvious to me from Section 879(a) itself.

I am convinced that Section 879(a) exacts more for a nighttime search than merely probable cause for a search. I cannot, however, accept appellees' argument that Section 879(a) embraces the criteria for nighttime searches which are contained in the general search warrant provisions of D.C.Code §§ 23-521 to 23-523.[14] To require compliance with those standards in order to activate Section 879(a) would be to strain its wording beyond any perceptible intent of Congress in enacting special measures to control the drug traffic. Whatever may have been its purpose in selecting the language of Section 879(a), it could hardly have sought to limit nighttime searches for controlled drugs as strictly

---

10. Section 879(a) reads:

 A search warrant relating to offenses involving controlled substances may be served at any time of the day or night if the judge or United States magistrate issuing the warrant is satisfied that there is probable cause to believe that grounds exist for the warrant and for its service at such time.

11. 294 A.2d 164 (D.C.App.), cert. denied, 409 U.S. 992, 93 S.Ct. 341, 34 L.Ed.2d 258 (1972). In *Thomas*, a majority of the court construed § 879(a) as my colleagues do here. *Id.* at 166.

12. United States v. Public Util. Comm'n of California, 345 U.S. 295, 315, 73 S.Ct. 706, 97 L.Ed. 1020 (1953) ; Ex parte Collett, 337 U.S. 55, 61, 69 S.Ct. 944, 93 L.Ed. 1207 (1949) ; See also United States v. Rice, 327 U.S. 742, 752–753, 66 S.Ct. 835, 90 L.Ed. 982 (1946).

13. "Subsection (a) of this section incorporates 18 U.S.C. 1405 and authorizes service of a search warrant at any time of the day or night if probable cause has been established to the satisfaction of the judge or U.S. magistrate issuing the warrant." H.R.Rep. No. 91-1444 (pt. I), 91st Cong., 2d Sess. 54 (1970) U.S.Code & Cong.News, p. 4621. Identical language *is used in the Senate Report*, S.Rep. No. 91–613, 91st Cong., 1st Sess. 30–31 (1969).

14. D.C.Code § 23-522(c)(1) (Supp. V 1972) permits search warrants to be executed at any time of the day or night only upon probable cause to believe that
 (A) it cannot be executed during the hours of daylight, (B) the property sought is likely to be removed or destroyed if not seized forthwith, or (C) the property sought is not likely to be found except at certain times or in certain circumstances. . . .

as nighttime searches in non-drug cases.[15]

Nor am I persuaded to my colleagues' view of that Section 879(a) countenances a direction for a nighttime search just on probable cause to believe that the sought-after drugs are then present on the person or the property to be subjected to the search. Unless there is a showing of probable cause to believe that the matter to be seized will be found by search of a designated person or place, a search warrant cannot issue at all.[16] Consequently, my colleagues' construction of Section 879(a) would demand no more for a nighttime search than one in the daytime; in other words, no more than is prerequisite for any search. If, as I think, the last clause of Section 879(a) establishes a probable cause requirement for nighttime execution additional to probable cause to search,[17] their construction reads that clause completely out of the section and would leave the door wide open to nighttime execution of any warrant licensing a search for controlled substances.

In my view, the probable cause which Section 879(a) exacts for searches at night can be supplied only by circumstances demonstrating reasonable cause for a search at that particular time.[18] Section 879(a) calls for something above and beyond the showing that would support a daytime search, and that would require a degree of justification outweighing the potentially more serious intrusion on privacy inherent in any nighttime search. Not all searches for controlled substances possess the same degree of urgency, nor do all applications for nighttime search warrants induce the same conviction of need. Some probable cause is more probable than some other, and some ultimately turns out to be a false alarm. A standard of reasonable cause which enables a realistic evaluation of the competing public and private interests accommodates the myriad situations confronting magistrates and judges far better than any inexorable rule possibly could. And such a standard serves well the legislative objectives underlying Section 879(a) while maintaining an appropriate sensitivity to the concern for privacy shared by the citizenry at large.

The test of reasonable cause for nighttime execution does not demand a demonstration that drugs are positively on the premises at night, or that they could be found on the premises only at night, or that for some reason a search would be impossible in the daytime. It does summon some factual basis for a prudent conclusion that the greater intrusiveness of nighttime execution of the warrant is justified by the exigencies of the situation. The remaining question, then, is whether there was justification of that caliber in these cases.

15. As the House Report states, the purpose of Congress in enacting the Controlled Substances Act was to deal with narcotic usage by more effective methods of law enforcement. See H.R.Rep. No. 91–1444 (pt. I), 91st Cong., 2d Sess. 1 (1970).

16. Sgro v. United States, 287 U.S. 206, 210–211, 53 S.Ct. 138, 77 L.Ed. 260 (1932); Schoeneman v. United States, 115 U.S.App.D.C. 110, 113, 317 F.2d 173, 176 (1963); Rosencranz v. United States, 356 F.2d 310, 315–318 (1st Cir. 1966); Durham v. United States, 403 F.2d 190, 193–194 (9th Cir. 1968). See also Jones v. United States, 362 U.S. 257, 270–271, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960); United States v. Ramirez, 279 F.2d 712, 715 (2d Cir.), cert. denied, 364 U.S. 850, 81 S.Ct. 95, 5 L.Ed.2d 74 (1960).

17. See text *supra* at notes 10–11.

18. The standard of "reasonable cause shown" has replaced the "positivity" requirement for nighttime searches under former Fed.R.Crim.P. 41(c). The Rule as amended reads in pertinent part:

The warrant shall be served in the daytime, unless the issuing authority, by appropriate provision in the warrant, and for reasonable cause shown, authorizes its execution at times other than daytime. It shall designate a federal magistrate to whom it shall be returned.

## III

Consideration of this question marks the point at which I am able to rejoin my colleagues—in the disposition of these appeals. For while I do not subscribe to the probable cause standard they espouse for nighttime searches under Section 879(a), I am satisfied that the warrants and supporting affidavits in these cases afforded ample foundation for allowance of such searches under the test I have endeavored to articulate.

The affidavits in the two cases are quite similar, and they portray very similar situations. The affiant, a police officer, was told by an informant of proven reliability that a named individual —in each case, the appellant—was selling narcotic drugs on specified premises. The informant advised of a recent purchase which he had made, and stated that he could transact another for the edification of the officer. The information supplied by the informant was then verified by a transaction, at the place and with the person previously specified, under controlled conditions leaving no doubt as to a sale of narcotics.

In the recitals bearing vitally on the question at hand, the search warrants in both cases were identical. Each stated that the magistrate was "satisfied that there is probable cause to believe that" narcotics and narcotic paraphernalia "is being concealed on the" described premises. Each warrant proceeded to direct that it be served and that the search be made "at anytime in the day or night." The service and search occurred in the nighttime within one day in one instance, and within three days in the other instance, after the verified on-premises drug purchase was made.

Beyond cavil, the affidavit disclosed and the magistrate found reasonable cause for a nighttime search in each of these cases. The showing went beyond grounds for believing that narcotics were kept on the premises searched; it extended to ground for believing that a drug-peddling operation persisted there. Where, as here, it appears that a search

is calculated not only to garner evidence of past crime but also to terminate a serious species of ongoing criminality, reasonable cause for a nocturnal intrusion is demonstrated. For this reason, I concur in the conclusion that there was an ample legal and factual basis for the searches, and in reversal of the orders suppressing their fruits.